[S. F. No. 1222. In Bank.—October 17, 1898.]

GEORGE K. FITCH, Respondent, v. BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO, Appellant.

WATER RATES—DELAY OF MUNICIPAL BOARD—REMOVAL FROM OFFICE—ACTION BY TAXPAYER—INTERESTED PARTY.—A taxpayer is not an "interested party," within the meaning of section 1 of article XIV of the constitution, authorizing peremptory process to compel the fixing of water rates for the use of water in municipalities, if not fixed in the month of February; and if such rates are thereafter fixed prior to July 1st, a taxpayer has no interest which can sustain a subsequent action by him to remove the municipal board from office for mere delay to fix rates in the month of February, under section 8 of the act of 1881 (Stats. 1881, p. 54), authorizing such removal for failure of the board to perform its duties "at the time" and in the manner therein specified, "at the suit of any interested party."

ID.—VALIDITY OF DELAYED ORDINANCE.—An ordinance fixing water rates passed subsequent to the month of February, and prior to July 1st, when it is required to take effect, is equally as valid, without peremptory process compelling it, as if passed under its mandate.

ID.—LEGISLATIVE PENALTY FOR DELAY—CONSTITUTIONAL LAW.—The constitutional provision authorizing the legislature to prescribe "further processes and penalties" for failure to pass the ordinance in the month of February is to be understood as only authorizing such processes and penalties as are within the power of the legislature to prescribe, in view of other limitations of the constitution.

ID.—PROSECUTIONS MUST BE IN NAME OF PEOPLE.—Under section 20 of article VI of the constitution, all prosecutions are required to be conducted in the name of "the people of the state of California,"and by their authority; and the legislature has no power to authorize the penalty of the removal of a board from office for delay in fixing water rates to be prosecuted "at the suit of any interested party," or in the name and at the instance of any individual.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. William T. Wallace, Judge.

The facts are stated in the opinion of the court.

Garret W. McEnerney, and E. S. Pillsbury, for Appellant Board of Supervisors.

Henley & Costello, for Appellant T. A. Rottanzi.

McGowan & Squires, for Appellant John Lackman.

John T. Doyle, *Amicus Curiae*, for Appellants.

W. T. Baggett, George W. Schell, and Philip Galpin, for Respondent.

HARRISON, J.—The constitution, article XIV, section 1, after providing that the rates to be collected by any person, company, or corporation for the use of water supplied to any municipality or its inhabitants shall be fixed annually by the governing body of such municipality, provides: "Such ordinances or resolutions shall be passed in the month of February of each year, and take effect on the first day of July thereafter. Any board or body failing to pass the necessary ordinances or resolutions fixing water rates, where necessary, within such time, shall be subject to peremptory process to compel action at the suit of any party interested, and shall be liable to such further processes and penalties as the legislature may prescribe. Any person, company, or corporation collecting water rates in any city or county, or city or town, in this state, otherwise than as so established, shall forfeit ·the franchises and waterworks of such person, company, or corporation to the city and county, or city or town, where the same are collected for the public use."

Two courses of action are thus authorized to be pursued against the board of supervisors, or other governing body of the municipality, in case of its failure to pass such ordinances or resolutions as will enable any person or corporation to collect rates or compensation for the water supplied by it to the municipality, or its inhabitants therein, viz., a peremptory process to compel the board to pass the ordinances or resolutions, and a punishment

for its failure to pass them.  The first is given by the constitution itself, and may be invoked by any "party interested" without the necessity of any legislation therefor.  The "party interested," who is thus authorized to invoke peremptory process to compel the board to pass an ordinance fixing the water rates, is a party who has an interest in having the rates fixed, and who would be injuriously affected if they were not fixed.  The provision that "the rates or compensation to be collected shall be fixed annually" and "shall continue in force for one year, and no longer," read in connection with the concluding sentence of the section, by which a company which shall collect water rates "otherwise than as so established" shall forfeit its franchises and waterworks for the public use, make it evident that the furnisher of water would be injuriously affected if the rates are not fixed, and is therefore a "party interested" who is entitled to such peremptory process.

The provision that the ordinance fixing the rates shall not take effect until July, although it is to be passed in February, is manifestly for the purpose of affording to the person or company supplying water ample time to adjust the individual rates for its consumers in accordance with the terms of the schedule fixed by the ordinance, and also to provide an opportunity, if necessary, in case the ordinance shall not be passed in February, to invoke process for compelling the board to pass an ordinance prior to July.  The failure of the board to pass an ordinance in the month of February is by the terms of the section made a condition precedent to the right to ask for process to compel action by it, since it cannot be determined until after February has expired whether there will be a failure to pass the ordinance "within such time"; and, inasmuch as the right to process for the purpose of compelling action by the board cannot be invoked until after February, it must follow that an ordinance fixing rates, which is passed subsequent to February, is as valid as if it were passed in February, and that the rates fixed by such ordinance may be collected from the consumer, since the constitution would not authorize the issuance of process to compel action by the board if its action under such process would be vain and nugatory.  Hence, an ordinance passed subsequent to February, without such process, is equally valid as if passed under its mandate.

The provision in the section which renders the board "liable to such further processes and penalties as the legislature may prescribe," in case of its failure to pass the ordinances within the month of February, clearly indicates not only that in the absence of legislation the board will not be liable to any penalty therefor, but also that it will be liable to only such processes and penalties as are within the power of the legislature to prescribe.

In pursuance of this provision of the constitution the legislature passed the act of March 7, 1881. (Stats. 1881, p. 54.) But, while the authority to prescribe a penalty for the failure of the board is referable to this section, the extent of the penalty and the proceedings for its enforcement must be in conformity with the legislative power elsewhere conferred by the constitution.

Section 8 of this act is as follows: "Any board of supervisors or other legislative body of any city and county, city or town, which shall fail or refuse to perform any of the duties prescribed by this act, at the time and in the manner herein specified, shall be deemed guilty of malfeasance in office, and upon conviction thereof at the suit of any interested party, in any court of competent jurisdiction, shall be removed from office."

To the extent that this section authorizes the penalty to be imposed "at the suit of any interested party," it is not within the provision of the above section of the constitution, unless it should be held that the provision for the penalty is a part of the process authorized to compel action by the board; but after an ordinance has been passed there is no occasion for invoking any process to compel action. The evident purpose of the section is to provide a penalty by way of punishment for the delinquency of the board. The term in which the delinquency is defined—"malfeasance in office"—and the declaration that "upon conviction" of the delinquency the board shall be deemed "guilty," and the penalty provided, "removal from office"—all point to an offense which has been completed, and are conclusive reasons for holding that the purpose of the section was not to compel action by the board, but to punish it for its failure to act. The provision in the section that the penalty may be imposed "at the suit of any interested party" is, however, inconsistent with section 20 of article VI of the constitution, which is: "The style of all process shall be 'The people of the state of California,'

and all prosecutions shall be conducted in their name and by their authority." In whatever terms the failure of the board to pass the ordinance in February may be characterized, such failure, aside from the rights of a party who may compel action by the board, is an offense against the entire state, and not against any individual, and, under the above provision of the constitution, the legislature has not the power to authorize a prosecution for such offense in the name of and at the instance of any individual.

Moreover, irrespective of these considerations, the plaintiff herein is in no respect an "interested party" at whose instance the penalty may be imposed. He alleges in his complaint as the basis of his right to maintain the action, "that said plaintiff is a citizen of the United States and of the state of California, and is and for many years last past has been a resident taxpayer, householder, and freeholder within the said city and county, and a user and consumer of water sold, distributed, and supplied by the Spring Valley Water Works, a corporation, as hereinafter set forth, to said city and county and the inhabitants thereof, and therefore is interested in the rates or compensation collected and to be collected by said corporation for the use of water so supplied and to be supplied to said city and county of San Francisco and the inhabitants thereof." If it be assumed from the allegation that he is a user and consumer of water, that he is also a ratepayer, it does not follow that he has any interest which authorizes a prosecution of the board for its alleged offense. It cannot be said that one citizen of the state or of the city more than another is interested in having a penalty inflicted for delinquency in official duty, and the use of the term "party interested," rather than "person" in the above section of the statute, indicates that the legislature intended the "suit" to be instituted by one who had some personal and individual interest in the subject matter, and who had been injuriously affected by the failure to pass the ordinances. It is shown by the record herein that on the 2d of June, 1897, the board of supervisors did pass an ordinance fixing the rates to be collected during the year commencing on the 1st of July succeeding, and, as the present action was not commenced until the 15th of July, the plaintiff was not at that time a "party"

in any respect interested by reason of the failure of the board to fix the rates in February. We have seen that an ordinance fixing rates which is not passed until after February is as valid for the purpose of determining the rates to be collected as though passed in the month of February, and that the ratepayer is not interested in the time at which the ordinance is passed, provided there is at all times a legal ordinance under which he can know whether the amount demanded for the water supplied to him is correct. Prior to July 1, 1897, the rates to be paid by the plaintiff for the water supplied to him were fixed by the ordinance that had been passed in the previous year, and on and after July 1st they were fixed and capable of ascertainment by the ordinance passed on the 2d of June. It is not claimed that this ordinance is in any respect illegal, defective, or unjust, and, as the plaintiff was not, therefore, in any respect injuriously affected by the failure of the board to pass the ordinance in February, he was not an interested party within the meaning of the statute, and had no authority to institute the present proceeding. The court, therefore, when these facts were brought to its attention, should have dismissed the proceeding.

The judgment and order denying a 𝗿 ⁓ trial are reversed, and the superior court is directed to enter aʟ ⁓rder dismissing the proceeding.

Van Fleet, J., Beatty, C. J., Henshaw, J., Temple, J., and McFarland, J., concurred.

GAROUTTE, J., concurring.—I have not concerned myself in the consideration of the question as to whether or not Fitch is a proper party to inaugurate this proceeding. My conclusion rests upon the broad proposition that the act is unsound legislation and should be so declared.

When this case was here some time ago upon a preliminary proceeding, I had occasion to investigate the law bearing upon it, and gave my views in a few words as to the proper construction of the statute under which this prosecution is based. (*Morton v. Broderick*, 118 Cal. 487.) At that time I thought the charge was essentially criminal, and, being so, no law could stand which punished innocent officeholders because some other officeholder may have been guilty of malfeasance in office. Upon

such construction the law impressed me as violative of funda-
mental principles and necessarily unconstitutional.  The time
intervening since that decision was rendered has only served to
more firmly convince me of the soundness of the views I then
expressed.

As a civil proceeding, the judgment rendered can only stand
upon the theory that the act of the legislature upon which the
proceeding was based is in the nature of an act fixing the tenure
of office of the various public officers of the state, whose duties
under this statute demand the fixing of water rates in the month
of February of each year.  Such a construction of the statute
cannot be assented to for a moment.  It is not an act purporting
to fix or regulate the term of office, but rather an act to punish
certain public officers for violation of official duty by depriving
them of the remaining portion of their terms of office.  There is
an express provision of the law declaring the official term of
these officers to be two years.  Construing this act as a tenure
of office act would place it in direct opposition to this express
declaration of the law.  This statute was enacted under
authority and direction of that provision of the constitution of
the state which declares that the legislature may prescribe pen-
alties for a failure upon the part of boards of supervisors to fix
water rates in the month of February.  How can it now be held
that the legislature, in pursuance of such authority granted by
the constitution, passed an act fixing the tenure of office of the
supervisors of the state?  If such be the character and purpose
of the act it is neither authorized nor in line with this authority
granted by the constitution.  The fair, reasonable, and proper
construction of the act is, that the legislature, in pursuance of
the authority and direction of the constitution, prescribed a pen-
alty for failure of the supervisors to fix water rates, at removal
from office.  This act would have been no more criminal in
character if the legislature had prescribed the penalty for failure
to fix the rates at imprisonment in the county jail for six months,
or a fine of five hundred  dollars.  It must be conceded by
everyone that the judgment of removal from office is a penalty.
Yet all must recognize the fact that a penalty is but a punish-
ment inflicted upon a wrongdoer.  A party wholly guiltless can-
not be made to suffer a penalty.  And if this removal from

office is a punishment to be inflicted upon an officer for non-performance of official duty, then this act is not one pertaining to the tenure of office.

The legislature has the power to fix the tenure of office of the various county and municipal officers, and in the exercise of such power may declare the expiration of the term to take place upon the happening of some future event, which may or may not happen; but, if such event does happen, the officeholder goes out of office because his term of office has expired under the law.   His term has expired as absolutely as though the day fixed for its expiration had been known at all times.   But there is no semblance of a penalty suffered by the officeholder in such a case; no punishment is inflicted upon him.   In other words, if the removal from office attaches as a penalty to the officeholder, the act authorizing the removal can in no sense be treated as an act relating to the tenure of office.   Again, there is nothing in the act in any way indicating that it was the purpose of the legislature to legislate as to the tenure of office of members of the boards of supervisors of the state.   To the contrary, every paragraph and almost every line of the act indicates that the legislature intended by its provisions to punish supervisors by removal from office for failure to fix water rates in the month of February.   The phrases "guilty of malfeasance in office" and "upon conviction," found in the act, are not harmless, innocent terms, and would be found in no act dealing with tenure of office.   The attention of the court has been called to no act in this state or elsewhere, of general similar import, which has ever been construed as an act relating to the tenure of office.   It is assumed there is none.   A judgment that these supervisors have been guilty of malfeasance in office—and such is the judgment required to be entered by the act itself—cannot be justified under a purely innocent act relating to the tenure of office.

It is substantially conceded by counsel for respondent that, if the statute is essentially penal and the action essentially criminal, then this judgment cannot stand.   That it is an act penal in character, that it is an act essentially and directly aimed at the punishment of supervisors for the nonperformance of official duty, must be conceded.   Many reasons why the act does not contemplate a criminal action are suggested in the various briefs

of respondent's counsel.  These reasons are based largely upon the peculiar character of procedure to be followed.  It is only necessary to say that every reason suggested was carefully considered in the very recent case of *Kilburn v. Law*, 111 Cal. 239, a case involving an attempt to remove the bank commissioners from office for the nonperformance of official duty.  A single difference divides the two cases—the fact that the prosecution was there commenced under section 772 of the Penal Code, and here brought under a general statute of the state.  This difference is wholly insignificant.  In that case it was declared that the proceeding was criminal, although it bore substantially all the marks of a civil action found in this case.  As indicating that the particular character of procedure to be followed in a case like the present does not brand its character as either a criminal or civil action, it is sufficient to say that the constitution of the state, article IV, section 18, after providing for the impeachment of various state officers, declares: "All other civil officers shall be tried for misdemeanor in office in such manner as the legislature may provide."  It is thus apparent that the doors are left wide open by the constitution for the legislature to provide for the trial of municipal officers for misdemeanor in office in any way that body may see fit.  Under the very terms of the constitution the power of the legislature in such matters is exclusive and supreme.

In conclusion, we find the principles involved in this case covered as by a blanket in *Case of Marks*, 45 Cal. 199.  That case as authority has stood for a quarter of a century, quoted and approved by this court upon many occasions.  It was the unanimous decision of the court—a court composed of eminent jurists.  Marks, a harbor commissioner, was charged at the instigation of a private citizen with neglect of official duty under an act of the legislature passed in 1853.  In all essentials the constitution of the state at that time was the same as we find it now.  In its opinion the court in that case, defining the scope of the act, declared: "It is provided in substance in the act of 1853 that any person holding any office in this state, who shall neglect to perform his official duty according to law, shall be deprived of his office."  It will thus be observed that the act is mild and bland-like in its language as compared to the act in-

volved in this case, but at the same time it is equally apparent that it is entirely identical in principle. After exhaustive argument and consideration the court there laid down certain principles of law which are absolutely controlling here. It was first decided·that neglect of official duty amounted at common law to an impeachable misdemeanor in office, and upon conviction the officer must be removed. It is next declared: "There can be no doubt that the case made by the complaint is one directly within the provisions of the act of 1853. That act was designed to afford a remedy of a summary character against officeholders who were guilty of extortion or neglect in the performance of official duty, and the case of Marks is brought by the complaint within the latter category." It is next declared: "The act of 1853 does provide how, in what manner, upon what procedure, in what court, officers not of the first class shall be tried for that misdemeanor in office known at common law and recognized in this statute as neglect of official duty. The power of the legislature to enact such a statute (under the latter clause of section 18) is plain—as obvious as is the power of the assembly to prefer, and that of the senate to try, articles of impeachment under the first clause of the same section." It is next declared: "The power to remove certain officers for misdemeanor in office is exercised only by the assembly and senate under the name of impeachment—the like power to remove all other officers under like circumstances and for like causes is to be exercised 'in such manner as the legislature may provide.' The power to provide the manner in which a delinquent is to be tried in the second case is on a footing with the power to directly remove the delinquent by the judgment of the senate in the first case." In conclusion, and as absolutely controlling this whole question, the court declares: "It is the exercise by the district court of the power to remove from office upon conviction had, which is in fact the power of impeachment, and is impeachment in every respect except the mere form of procedure pursued." It is thus apparent that the proceeding in the present case upon principle and authority is in all material respects a proceeding to impeach these municipal officers for a nonperformance of official duty, by a procedure laid down by the legislature under direct authority from the constitution; for that authority declares that

these officers may be "tried for misdemeanor in office in such manner as the legislature may provide." The act before us provides a manner of trial for such officers. The proceedings under this act being in the nature of impeachment, it only remains to be said that the impeachment of a public officer for nonperformance of official duty is the highest form of criminal action.

By this act of the legislature nonperformance of official duty in fixing water rates in the month of February is declared to be malfeasance in office. These supervisors, under authority of this act, and by the judgment of the trial court, in effect have been impeached for malfeasance in office. The act provides that all supervisors comprising the board, innocent and guilty alike, must suffer such penalty of impeachment. In this very case the trial court declared that some of these defendants were wholly innocent of any violation of the law, and yet in the face of that fact removed them from office. The legislature has no power to pass an act visiting these serious consequences upon innocent men, and, as a necessary result, any act attempting to enforce such a power is unconstitutional. A determination as to the exact limits of the power of the legislature in declaring what acts of the individual shall constitute a crime is an interesting, and possibly a difficult, question, considered in the light of the constitution. But there is no difficulty in declaring, in the light of the constitution, that a legislature has no power to say that one man wholly innocent is guilty of crime and shall be punished because another man fails to perform his official duty. The power of the legislature reaches no such limit. It cannot be done under our form of government. I shall not concern myself in pointing out the particular provision of the constitution forbidding it. I find it between the lines. The whole spirit of the instrument denies the right to do it.

I concur in the judgment and order of reversal.