[Civ. No. 25507. Second Dist., Div. One. Feb. 26, 1962.]

WILMA ISOM, Plaintiff and Respondent, v. ROBERT SLAUGHTER, Defendant and Appellant.

[Civ. Nos. 25508, 25509. Second Dist., Div. One. Feb. 26, 1962.]

MARGUERITE SLAUGHTER, Plaintiff and Respondent, v. ROBERT M. SLAUGHTER, Defendant and Appellant.

(Two Cases.)

Arthur D. Cohen for Defendant and Appellant.

Henry Galen for Plaintiff and Respondent Slaughter.

FOURT, J.—This matter involves three separate appeals which by stipulation are consolidated. The cases involve a divorce proceeding, the transfer of certain real property and the determination as to who is entitled to such property.

In our case No. 25509 the record reveals that Marguerite Slaughter on June 17, 1959, filed a divorce action against Robert M. Slaughter. She alleged that the parties were married on November 26, 1933, and separated on August 26, 1953; that there was one adopted daughter and that there was community real property which she described (1276 East 55th Street, Los Angeles); and further that Robert had been guilty of extreme cruelty. She also alleged in effect that

Robert was guilty of adultery, in that he had lived with Wilma Isom for several years. The plaintiff sought a divorce, the assignment of the community property to her, custody of the child and support and maintenance for herself and the child. In a pretrial statement Robert admitted the marriage and the charge of adultery, and further admitted that he had fathered the children of Wilma Isom.

In an answer filed on September 14, 1959, Robert in effect denied that the real property in question was community property in character.

Prior to the filing of the answer Robert, on or about July 30, 1959, after he had been served with a copy of the divorce proceeding, made out a deed of his interest in the real property to Wilma Isom.

On August 10, 1959, Wilma Isom filed a complaint (our case No. 25507) wherein she set forth that she had loaned $1,659.41 to Robert Slaughter and Marguerite Slaughter, and that such money was used to purchase materials and pay labor charges in the construction of the building on the East 55th Street property in Los Angeles. It was further alleged that the Slaughters promised Isom that in consideration of the loan they would give to her a proportionate interest in the real property in question, but that they now "reputiate [sic]" and ignore the plaintiff. An amended complaint was filed on October 22, 1959, wherein Isom alleged that she delivered to Robert Slaughter money in the aggregate sum of $1,659.41 ". . . to be safely held and kept for her and to be returned to her upon demand"; that the first part of said money was delivered to Robert on December 3, 1954, that a confidential relationship existed between Isom and Robert which grew out of the fact that Robert was the father of Isom's children and she thought she could trust him with the funds and could rely upon him; that at all times Robert had title to and was the owner of certain real property on East 55th Street in Los Angeles; that Robert wrongfully appropriated the funds for the purpose of buying materials and paying labor charges in the construction of the building upon the real property in question; that she demanded the return of the money which was refused; that Marguerite Slaughter claims an interest in the real property and Isom also claims an interest therein. A declaration of the rights of the parties was sought.

Marguerite Slaughter answered the amended complaint on November 10, 1959, in effect by setting forth that Robert was

the father of the children of Wilma Isom born out of wedlock, that the property in question was the community property of Robert and Marguerite Slaughter, that their rights were being litigated in a divorce action filed by Marguerite Slaughter against Robert Slaughter, which was then and there pending. Further Marguerite asserted that Robert Slaughter had fraudulently conspired and schemed with Isom to the end that Marguerite would be deprived of her property; that the amended complaint did not state facts sufficient to constitute a cause of action; that the cause was barred by section 339, subdivision 1, Code of Civil Procedure, denied certain of the other allegations of Isom and concluded with the prayer that Isom take nothing.

On February 5, 1960, Marguerite Slaughter brought an action against Robert Slaughter and Wilma Isom (our case No. 25508), wherein she alleged among other things that she and Robert Slaughter were married on November 26, 1933, and were husband and wife; that she and Robert were the owners of the real property in question on East 55th Street in Los Angeles; that the property was the community property of herself and her husband; that she and her husband separated on August 26, 1953; that Isom was the mother of five children fathered by Robert, and that Robert and Isom lived together ostensibly as man and wife for several years; that the claims of Isom and Robert were fraudulent and without right; that a deed signed by Robert on July 30, 1959, purported to convey the property to Isom; that the property was the community property of Robert and Marguerite Slaughter and the deed was executed by Robert without consideration and without the knowledge or consent of Marguerite; that there was a divorce proceeding pending in which Marguerite was seeking the property and that therefore the claims of Isom and Robert were of no effect. Robert and Isom alleged in their answer to such complaint that the property in question was held by Marguerite Slaughter and Robert Slaughter as joint tenants.

Findings of fact and conclusions of law were waived in writing. The judge however made certain findings and adjudged in effect that Marguerite should have a divorce from Robert; that she should have the custody of their adopted child with certain support and maintenance for the child and Marguerite; further it was adjudged that real property was community property and the same was assigned to Marguerite.

It was also adjudged that the judgment in the divorce case was res judicata in respect to the community property considerations in the other actions, all of which were tried at the same time.

It was understood at the consolidated trial of the three cases that evidence in each case could be considered in the remaining cases, and that the determination of whether the property was joint tenancy or community property in one case could be res judicata as to the other two cases.

The cause was heard on July 18, 1960, and judgment was filed on August 3, 1960, wherein it was ordered that the claims of Robert and Wilma Isom to the property were invalid and that they had no rights therein; that by the deed Wilma Isom acquired no interest in the property and the title was quieted in Marguerite Slaughter.[1]

A notice of appeal was filed by Robert M. Slaughter to the effect that he appealed from the interlocutory decree of divorce (our case No. 25509).

A notice of appeal was filed on August 16, 1960, by Robert

---

[1] (Our case No. 25507.)

"It Is Further Ordered, Adjudged and Decreed that by virtue of a stipulation made by the parties in Action No. D-555911 in this Court, wherein Marguerite Slaughter is plaintiff and Robert M. Slaughter is defendant, the interlocutory decree of divorce entered in said action is res judicata in respect to the adjudication of the Court therein that said above-described real property is the community property of Robert M. Slaughter and Marguerite Slaughter;

"It Is Further Ordered, Adjudged and Decreed that the title to said community property has been divested out of defendant Robert Slaughter, also known as Robert M. Slaughter, and has been vested in Marguerite Slaughter under and by virtue of the Interlocutory Decree of Divorce entered in said divorce action No. D-555911 in this Court."

In the divorce case (our case No. 25509) it was adjudged:

"4. That the plaintiff shall take the following described community property as her separate property, and all title and interest of the defendant therein is divested out of him and is vested in the plaintiff, to wit: Real estate located at 1276 East 55th Street, in the City of Los Angeles, County of Los Angeles, State of California, described as follows: Lot 158 of Central Avenue Home Tract, as per map recorded in Book 4, Page 17 of Maps, in the Office of the County Recorder of said County; and the household furniture and furnishings located in the above-described premises.

"5. That this interlocutory decree and judgment shall be res judicata in respect to the community property, hereby adjudged and decreed to be the separate property of the plaintiff, in two other actions tried in this Court at the same time this case was tried, to wit: Action No. 728320 wherein Wilma Isom is plaintiff and Robert Slaughter and Marguerite Slaughter are defendants; and Action No. 739220 wherein Marguerite Slaughter is plaintiff and Robert M. Slaughter and Wilma Isom and Doe I and Doe II are defendants."

M. Slaughter in our case No. 25508 to the effect that he appealed from "... the interlocutory decree of divorce...."

A notice of appeal (our case No. 25507) in form in part as follows: "Take notice that the defendant ROBERT M. SLAUGHTER, hereby appeals from the interlocutory decree of divorce in the above entitled matter from the whole thereof, entered on August 5, 1960" and signed by "Wilma Isom" was filed on August 16, 1960.

The three notices of appeal are practically identical, each indicating that the defendant Robert M. Slaughter is the only person appealing. In our cases numbered 25508 and 25509 Slaughter signed the notices of appeal himself. In the remaining case apparently Wilma Isom signed the notice, not as an appellant but as heretofore indicated. Counsel for Isom and Slaughter did not sign any of the notices of appeal. There is no showing that Wilma Isom is an attorney at law and there is no showing that she had any authority to sign a notice of appeal for Robert M. Slaughter. ▉▉▉ The signature of an unauthorized attorney is improper and wholly ineffectual on a notice of appeal (*Edlund* v. *Los Altos Builders,* 106 Cal. App.2d 350, 357 [235 P.2d 28]). It would appear to be even more objectionable for an unauthorized layman to sign such a document for an appellant. There can be little if any doubt as to who the appellant is in the case in question for the notice specifically spells out that "... ROBERT M. SLAUGHTER, hereby appeals. ..." and no one else is mentioned as an appellant or intimated to be such. However we have considered the matter as though Wilma Isom was the appellant.

Appellant asserts in effect that the evidence was not sufficient to support the findings or the judgment to the effect that Wilma Isom has no interest in the real property.

There was evidence that the property was purchased in 1936 by Robert and Marguerite. The down payment of $150 was paid by Marguerite from money which she had received from her brother. Marguerite and Robert lived in the house until 1953, when the separation occurred. Before buying the property they went out to look at it together and then went to the real estate office to negotiate for the purchase thereof. ▉▉▉ Marguerite testified: "When we went down to the real estate office Mr. Slaughter told him that we liked the place and that we were going to take it. And so he asked us in what name we wanted the property. And Mr. Slaughter told him he wanted it community property, and Marguerite Slaughter and Robert Slaughter, man and wife. And then the—Mr.

Doles suggested that we have written in the deed joint tenants so in case one of us passed we wouldn't have to have it probated, and I asked him if that would affect that community rights, and he say if it was understood between us, it wouldn't. So then we agreed to take it.''

Marguerite referred to the place as a single home—a ''——community property home.'' The community earnings of the husband and wife, who both worked, were commingled and by June of 1950 the balance due was reduced to approximately $133. They decided to remodel and improve the property, which process went on for more than three years, during which time a series of secured loans were made on the property and the money from said loans was appropriated by the husband and disposed of as he pleased. The premises became uninhabited in 1953 and were vacated for a time. The husband never returned to the home. The wife and the adopted daughter moved back to the property and the husband from that time never contributed to the support and maintenance of the wife or the adopted child. The property, by 1955, was encumbered to the extent of approximately $8,000. The husband made no payments on the loans and the wife was required to and did pay the taxes, the loan payments and cost of repairs and other expenses pertaining to the property. Some of the money which had been secured from one of the loans on the property was used by the husband as a down payment on a house located on Burnside Avenue, where he and Wilma Isom and the five illegitimate children lived. The husband agreed with the wife that if she would raise additional money (which he needed for the Burnside Avenue house) on the home (the East 55th Street property) that he would relinquish his interest in the home. The money was then borrowed and used on the Burnside Avenue house. In order to prevent foreclosure on the home on East 55th Street Marguerite was compelled to raise another $700 to lift foreclosure proceedings against the Burnside Avenue house. This became necessary because one of the loans on the Burnside Avenue house was tied in with the home on East 55th Street as security.

There is a presumption that property acquired during marriage by a husband and wife is community property. (Civ. Code, § 164.)

The property in question was purchased with community funds and there was an intention expressed at the time of the purchase that the property be community property.

In this case there can be no doubt that the evidence was

clear that all of the money which went into the property was the community property of the husband and wife. "The typical method of acquiring community property is by the earnings of either the husband or the wife." (*Perdicalis* v. *Perdicalis*, 92 Cal.App.2d 274, 276 [206 P.2d 650].)

 The fact that the property was deeded to the husband and wife in joint tenancy is not necessarily controlling when the parties intended that the property in fact be community property. (*Silverstein* v. *Silverstein*, 76 Cal.App.2d 872, 876 [174 P.2d 486]; *Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757 [146 P.2d 905].)

The court could and apparently did consider the evidence with reference to the motive for placing the property in joint tenancy so far as the deed was concerned. The trial judge was not bound by the form of the deed alone. (*Faust* v. *Faust*, 91 Cal.App.2d 304, 308 [204 P.2d 906].)

 The trial court under the circumstances of this case was warranted in its conclusion that the parties intended that the real property in question be and that it is community property.

 It was not essential to show an express oral agreement, but the status of the property may be shown ". . . ' "by the very nature of the transaction or appear from the surrounding circumstances." ' " (*Long* v. *Long*, 88 Cal.App.2d 544, 549 [199 P.2d 47].)

 There can be no doubt that the courts will ". . . prevent use of common law forms of conveyance to alter the community character of real property contrary to the intention of the parties." (*Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757 [146 P.2d 905].)

 In this case there was testimony and evidence from which inferences could be drawn to the effect that the parties agreed upon community ownership of the property in question. Their conduct with reference to the property until the time the husband decided to leave and to live with Wilma Isom dictates that they, the husband and wife, considered the property to be community in character.

The judgments are and each of them is affirmed.

Wood, P. J., and Lillie, J., concurred.