[Civ. No. 39501. Second Dist., Div. Two. Aug. 15, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE VENTURA JUDICIAL
DISTRICT OF VENTURA COUNTY, Defendant and Respondent;
FLORENCE MARIE PELLEGRINO et al.,
Real Parties in Interest and Appellants;
DOUGLAS BISHOP, Real Party in Interest and Respondent.

## COUNSEL

Sweet, Norman & Siple, Randolph E. Siple and Jon H. Robinson for Real Parties in Interest and Appellants.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, William R. Pounders, Frederick R. Millar, Jr., John R. Evans, Deputy Attorneys General, Woodruff J. Deem, District Attorney, and Sandra L. Rogers, Deputy District Attorney, for Plaintiff and Respondent.

No appearance for Defendant and Respondent and for Real Party in Interest and Respondent.

## OPINION

**COMPTON, J.**—The Attorney General of the State of California and the District Attorney of the County of Ventura, acting in the name of the People of the State of California, petitioned the Superior Court of the County of Ventura seeking a writ of mandate to compel the Municipal Court of the Ventura Judicial District to vacate certain of its orders and either refrain from further proceedings in or to dismiss certain criminal actions pending before it.

This is an appeal from the order of the superior court directing the issuance of a peremptory writ of mandate.

The factual background of this litigation is unusual but not unique and focuses on a problem which has from time to time been a source of consternation to courts, prosecuting attorneys and persons charged with crime.

It appears that on July 4, 1971, in a residential neighborhood in Ventura County, some citizens had gathered to shoot fireworks in the street

in front of their homes. During the course of the activity a Mr. Bishop drove his car down the street honking his horn and flashing his headlights.

Some of the citizens who were watching the fireworks were offended by Bishop's activity. They considered that he was driving too fast and creating a danger to children in the area, and yelled to Bishop to slow down. A Mrs. Pellegrino and a Mr. Stromstad ran after the car and when Bishop stopped his car at the end of the block, he was apparently assaulted by Pellegrino and Stromstad. The police were called and reports were made.

The reports were subsequently reviewed by a deputy district attorney and, with that deputy's approval, misdemeanor criminal complaints signed by Bishop and naming Pellegrino and Stromstad as defendants were filed with the Municipal Court of the Ventura Judicial District. These complaints charged each defendant with a count of violation of Penal Code section 242 (battery) and Penal Code section 415 (disturbing the peace). Letters of notification were mailed to each defendant.

It is significant to note that prior to the filing of these complaints, the deputy district attorney interviewed two additional witnesses who apparently corroborated the information previously provided by Bishop and the police reports.

Mrs. Pellegrino apparently contacted a Mr. Randolph Siple, attorney at law, concerning the matter, for on July 9, 1971, she appeared at the office of the district attorney bearing a letter addressed to the district attorney and signed by Mr. Siple[1] requesting that Bishop be charged in a criminal complaint.

Since Mrs. Pellegrino was already a person charged with a criminal offense, she, on the advice of Mr. Siple, refused to make any statement to the deputy district attorney, other than to insist on filing the complaint against Bishop. The district attorney refused to approve the filing of the complaint.

On July 22, 1971, the date for the arraignment of Stromstad, Mr. Siple appeared in the Ventura Municipal Court and requested a conference with the Honorable Donald Pollack, judge of the municipal court who was there presiding.

---

[1]The letter read as follows: "Please prepare a Complaint for Mrs. Pellegrino to sign charging the following violations against Mr. Douglas Bishop: Penal Code §§ 240, 242, 415; Vehicle Code §§ 22350, 22352(b), 23109(b). The date of offense for all the above is July 4, 1971. Please send him an appearance letter requesting he appear at Camarillo for arraignment on July 23, 1971, at 8:30 A.M."

At a conference in chambers attended by Judge Pollack and Deputy District Attorney Sandra Rogers, Mr. Siple presented the judge with a letter which offered for filing a criminal complaint against Bishop and requested the court to "disqualify" the district attorney and appoint Siple as "special prosecutor." This letter had attached to it a letter of the district attorney advising Mr. Siple of the district attorney's refusal to authorize such a complaint against Bishop.

The deputy district attorney vigorously objected to the appointment of a special prosecutor and rejected any suggestion that the district attorney was disqualified. The deputy further advised the court that in the opinion of the district attorney there was no evidence to warrant a prosecution of Bishop.

The record reflects that on July 23, 1971, two misdemeanor criminal complaints bearing Nos. TC 2487 and TC 2488 were filed with the court. These complaints each sworn to by Florence Pellegrino alleged in simple statutory language that Douglas Bishop had violated Penal Code section 240 (simple assault) and 242 (battery) and Vehicle Code section 22350 (basic speed law) and 22352, subdivision (b) (exceeding 25 MPH in a residential district) and 23109 (engaging in a speed exhibition).

The record further reflects that on that same date in connection with complaint No. TC 2487, the court ordered "Atty. Siple appointed as Special Prosecutor upon Court's Motion and finding — DDA disqualified." As to TC 2488 the order reads "Atty. Siple appointed as Spec. Prosecutor upon Court's finding—DA office is disqualified."

On August 18, 1971, the Superior Court of Ventura County issued an "Alternative Writ of Mandate and/or Prohibition" to the municipal court directing it to "vacate your orders of July 22, 1971, disqualifying the district attorney and appointing real party in interest Mr. Randolph Siple as a special prosecutor in the above named actions, and to desist and refrain from proceeding in the above actions, except to dismiss them," or to show cause why such action should not be taken.

On September 2, 1971, following a hearing, the superior court issued a peremptory writ of mandate which read in pertinent part as follows:

". . . the court is satisfied that the petitioner is entitled to certain of the relief sought herein. The petition is granted and a peremptory writ of mandate shall issue forthwith commanding the Municipal Court of Ventura County to annul and vacate its findings and orders of July 22, 1971 in its cases numbered TC 2487 and 2488 respectively."

Thus the order of the superior court was to annul the appointment of

Siple as special prosecutor. The order did not direct dismissal of the complaints but "suggested" that if the district attorney upon further evaluation was still of the opinion that no prosecution should be conducted against Bishop he should move for dismissal of the complaints.

The notice of appeal purports to be filed on behalf of "The Municipal Court of the County of Ventura" and is signed "Jon H. Robinson for Randolph Siple, Special prosecutor."

We take judicial notice of the fact that Jon Robinson is an attorney in private practice and an associate of Randolph Siple. We further notice that neither Robinson nor Siple are associated with the office of the County Counsel of Ventura County and thus, except for Siple's claimed status as "special prosecutor," neither is attorney for the Municipal Court of Ventura County.

Rule 1(a) of the California Rules of Court provides that "The notice shall be signed by the appellant or by his attorney . . . ."

In *Isom* v. *Slaughter,* 200 Cal.App.2d 700, at page 705 [19 Cal.Rptr. 541], this court held that "The signature of an unauthorized attorney is improper and wholly ineffectual on a notice of appeal (*Edlund* v. *Los Altos Builders,* 106 Cal.App.2d 350, 357 . . .)."

Since we have concluded that the municipal court had no authority to appoint Mr. Siple as "special prosecutor," it is clear that the latter has no standing to represent the court on this appeal.

However, since the question presented is of considerable importance to the law of this state and since rule 1(a) calls for liberality of construction we treat this notice, defective as it is, as an appeal by Siple and Pellegrino, the real parties in interest, and thereby reach the merits of the litigation. (See *Collins* v. *City & Co. of S. F.,* 112 Cal.App.2d 719 [247 P.2d 362]; *Estate of Browne,* 2 Cal.App.3d 406 [82 Cal.Rptr. 705].)

The issues presented are two in number:

(1) The validity of a procedure which permits an individual to institute criminal proceedings against another without authorization or approval by the district attorney. (While in this opinion we will refer to the district attorney as the prosecuting official, such reference would include the Attorney General on the one hand or city attorneys and city prosecutors on the other, in situations where those individuals are functioning as the prosecuting official.)

(2) The power of a court to appoint a "special prosecutor."

## THE FILING OF THE COMPLAINTS

■ At issue here is the apparent authority, under the relevant statutes, of individual persons to institute criminal proceedings with approval of a judge or magistrate but without concurrence, approval or authorization of the district attorney.

In the interest of crime prevention and suppression, police officers and, to a somewhat lesser degree, private citizens are empowered to make arrests, without warrants, for violations of criminal statutes.

The power to transmute an arrest into a full blown criminal prosecution, whereby the person arrested may be required to stand trial, is a significantly greater power and does not flow automatically from the power to arrest.

This greater power is exercised, in the case of a felony, by the filing of a complaint before a magistrate or with a municipal or justice court in the case of a misdemeanor.

When the filing of a complaint precedes an arrest the result is that criminal proceedings are first instituted, followed by the issuance of a warrant to bring the defendant before the court. (Pen. Code, §§ 813 and 1427.[2])

In either case the filing of a complaint charging the commission of a public offense is the critical event in instituting a criminal prosecution. This is true even though in the case of a felony the law requires a preliminary hearing, as a condition precedent to trial in the superior court. (Pen. Code, §§ 737 and 738.[3])

---

[2]Penal Code section 813 provides: "When a complaint is filed with a magistrate charging a public offense originally triable in the superior court of the county in which he sits, if such magistrate is satisfied from the complaint that the offense complained of has been committed and that there is reasonable ground to believe that the defendant has committed it, he must issue a warrant for the arrest of the defendant; provided, that when the magistrate is a judge of the justice court, he may issue such a warrant only upon the concurrence of the district attorney of the county in which he sits or the Attorney General of the State of California."

Penal Code section 1427, subdivision (a) provides: "When a complaint is presented to a judge of an inferior court of the commission of a public offense appearing to be triable in his court, he must, if satisfied therefrom that the offense complained of has been committed and that there is reasonable ground to believe that the defendant has committed it, issue a warrant, for the arrest of the defendant.

[3]Penal Code section 737 provides: "All public offenses triable in the superior court must be prosecuted therein by indictment or information, except as provided in the Government Code, the Juvenile Court Law and Section 859a of this code."

Penal Code section 738 provides: "Before an information is filed there must be a preliminary examination of the case against the defendant and an order holding him to answer made under Section 872. The proceeding for a preliminary examination must be commenced by written complaint, as provided elsewhere in this code."

At common law the authority to dismiss a criminal proceeding after it had commenced reposed with the prosecuting authority by virtue of the power of nolle prosequi. By the enactment of Penal Code sections 1385 and 1386[4] such authority in California was taken from the prosecutor and placed with the court.

Once a complaint is filed and the jurisdiction of the court or magistrate invoked, the power to dismiss is vested in the judge or magistrate. At that point the prosecution may only move the court for a dismissal. The court is not required to grant such motion. This shift of authority and control made important the answer to the question of where the power to control the initial filing of complaints does or should reside.

Article VI, section 20 of the California Constitution provides: "The style of all process shall be 'The people of the State of California,' and all prosecutions shall be conducted in their name and *by their authority*." (Italics added.)

"The district attorney is the public prosecutor. He shall attend the courts, and conduct on behalf of the people all prosecutions for public offenses." (Gov. Code, § 26500.) (Also see Gov. Code, § 26501, *infra*.)

This tandem of a constitutional provision and a statute has found application in a number of cases which under varying circumstances appear to recognize, albeit obliquely, the requirement that criminal prosecutions require the district attorney's approval for their institution. (See *Fitch* v. *Board of Supervisors,* 122 Cal. 285 [54 P. 901], holding invalid a statute purporting to permit "any interested party" to bring an action for removal from office for malfeasance against a city council or board of supervisors; (*Bridges* v. *Superior Court,* 14 Cal.2d 464, 474 [94 P.2d 983], revd. on other grounds, 314 U.S. 252 [86 L.Ed. 192, 62 S.Ct. 190, 159 A.L.R. 1346]) impliedly holding that an action for criminal contempt would have to be prosecuted in the name of the People of the State of California, and by their authority; (*Whitlow* v. *Superior Court,* 87 Cal.App.2d 175 [196 P.2d 590]) inferring district attorney's approval of the filing of an unverified complaint by a private citizen and thus compliance with Political Code section 4153 (now Gov. Code, §§ 26500, 26501) from the district attorney's participation in the trial.)

---

[4]Penal Code section 1385 provides: "The court may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."

Penal Code section 1386 provides: "The entry of a nolle prosequi is abolished, and neither the attorney general nor the district attorney can discontinue or abandon a prosecution for a public offense, except as provided in the last section."

In *Menveg* v. *Municipal Court,* 226 Cal.App.2d 569 [38 Cal.Rptr. 232], the City Attorney of Los Angeles had filed a misdemeanor complaint charging Menveg with violation of Penal Code section 272 (contributing to delinquency of minor) after the district attorney had declined to do so. The last sentence of Penal Code section 272 states: "The district attorney shall prosecute all violations .charged under this section."

On petition by Menveg, this court issued a writ of prohibition restraining the municipal court from further proceedings and concluding that the "prosecution was *initiated without lawful authority.*" (Italics added.)

This holding points to the fact that the jurisdiction of the district attorney includes the power to control the institution of criminal proceedings.

A literal reading of Penal Code section 740[5] and Penal Code section 806[6] would seem to lead to the conclusion that any person could, without approval of the district attorney, institute a criminal proceeding, either felony or misdemeanor, against another by the filing of a sworn complaint with a magistrate or municipal court. (The Legislature, apparently aware of the significance of this power, created a partial safeguard by providing in 1963 amendments to Penal Code sections 806 and 813 that where the magistrate is a justice of the peace, the filing of any felony complaint must be concurred in by the district attorney of the county or the Attorney General.)

Since all criminal proceedings must be brought in the name of the People of the State of California (Cal. Const., art. VI, § 20), such procedure, if it in fact exists, has the potential for permitting any person in the name of the People of the State of California to redress a personal grievance by way of a criminal prosecution against his adversary.

When it is remembered that crimes are considered to be offenses against the body politic for which the punishment is fine or imprisonment as distinguished from civil wrongs where private redress is obtained through

---

[5]Penal Code section 740 provides: "Except as otherwise provided by law, all public offenses triable in the inferior courts must be prosecuted by written complaint under oath and subscribed by the complainant. Such complaint may be verified on information and belief."

[6]Penal Code section 806 provides in pertinent part: "A proceeding for the examination before a magistrate of a person on a charge of an offense originally triable in a superior court must be commenced by written complaint under oath subscribed by the complainant and filed with the magistrate; provided, that when such magistrate is a judge of the justice court, the proceeding must be commenced by a written complaint under oath subscribed by the complainant, filed with the magistrate and concurred in by the district attorney of the county in which he sits or the Attorney General of the State of California."

individually prosecuted lawsuits for damages, the need to scrutinize this procedure in the light of the intent and indeed the power of the Legislature becomes apparent.

That the problem is real and not academic is demonstrated by the case of *Blackman* v. *MacCoy,* 169 Cal.App.2d 873 [338 P.2d 234, 339 P.2d 169], decided by this division in 1959.

In that case George and Charles Finn who were disgruntled litigants in a number of civil actions in both state and federal courts, lodged with the Los Angeles Municipal Court, sworn complaints charging their civil adversaries with a felony, to wit, conspiracy to commit perjury.

A municipal court judge signed and issued a warrant of arrest for the persons named in the complaint and bail was set at $5,000. When those persons appeared before another judge of the same court, the complaint was dismissed whereupon identical complaints were again filed with the judge who issued the first warrant and that judge again issued an arrest warrant, this time setting bail at $3,000. He ordered that the defendants be brought before him even though he was not sitting in the division of the court assigned to handle criminal arraignments.

The Superior Court of Los Angeles County issued a writ of prohibition directed to the individual judge prohibiting him from proceeding further because of his demonstrated bias in the matter.

This court affirmed the granting of the writ and, while recognizing the problem, found it unnecessary at that time to decide whether the municipal court had acted in excess of its jurisdiction in that the complaints were not issued at the request or with the concurrence of the district attorney.

Suffice to say, in that case citizens were twice hailed before the court to answer felony charges which lacked the sanction of the district attorney and which resulted merely from the spiteful actions of two private individuals.[7]

The vice of such procedure is further graphically demonstrated by what occurred in the instant case, not only in its impact upon Bishop, the named defendant in the questioned complaints, but in its practical effect on the operation of the court and the office of the district attorney.

Here a properly sworn complaint, approved by the district attorney,

---

[7]It is to be noted that these same individuals, in a collateral action growing out of the same civil dispute, effected a "citizens arrest" of the United States Attorney for the Southern District of California, an act for which they were subsequently prosecuted in the federal courts. (See *Finn* v. *United States,* 219 F.2d 894.)

was filed against Pellegrino and Stromstad. In an apparent attempt to frustrate the prosecution, one of the defendants sought to prosecute the complaining witness. As a result, Bishop stands charged with several criminal offenses in spite of the fact that the district attorney has determined that the charges lack merit.

Equally troublesome is the fact that the court, without authority to appoint a special prosecutor, now has before it an action filed, a charged defendant and a prosecuting witness who refuses to put forth any information except by way of a complaint in simple statutory language. No member of this triumvirate, with the possible exception of the judge, who would have to assume the role of both judge and prosecutor, is capable of moving the prosecution forward. This spectacle should be repugnant to anyone dedicated to our system of jurisprudence.

It is to be anticipated that in view of the demonstrated position of the municipal court, any motion by the district attorney to dismiss the action would not receive favorable consideration. Thus we undertake to determine whether this court should order the dismissal of the complaints in question. In so doing, we must analyze the procedure involved from two aspects: (1) the doctrine of separation of powers and the role of the district attorney; and (2) the right of the defendant Bishop to due process of law.

### The Role of the District Attorney or Public Prosecutor.

"The powers of the government of the State of California shall be divided into three separate departments—the legislative, executive, and judicial; and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except as in this Constitution expressly directed or permitted." (Cal. Const., art. III, § 1.)

This doctrine of separation of powers has recently received careful attention by the Supreme Court of this state.

In *Esteybar* v. *Municipal Court*, 5 Cal.3d 119, 127 [95 Cal.Rptr. 524, 485 P.2d 1140], our Supreme Court stated at page 127: "The prosecution of a case by the district attorney involves an exercise of *executive power*, . . ." Further in that case, the court in determining that the function of a magistrate in conducting a preliminary hearing on a felony charge was judicial in nature and that the magistrate could, under certain circumstances and without concurrence of the district attorney, treat as a misdemeanor a charge originally filed as a felony, emphasized the fact that "the magistrate's determination *follows* the *district attorney's decision to prosecute.*" (Italics added.)

In *Esteybar, supra,* the court in turn relied heavily on *People* v. *Tenorio,* 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993], in which a violation of the doctrine of separation of powers was found to exist in a statute investing the district attorney with the power to circumscribe the court's discretion in striking or dismissing alleged prior convictions. In buttressing its opinion, the court in *Tenorio,* at page 94 stated: "It is no answer to suggest that this [the prosecution's control over allegations of prior convictions] is but a lesser included portion of the *prosecutor's discretion to forego prosecution,* as the decision to forego prosecution does not itself deprive persons of liberty." (Italics added.)

*Tenorio* and *Esteybar* were situations where "the shoe was on the other foot" so to speak. The court in each instance struck down legislative attempts to "vest in the prosecutor the power to foreclose the exercise of an admittedly judicial power" (*People* v. *Tenorio,* at p. 94), when that power was exercised for the benefit of a person charged with crime. Both cases recognized that the charging process was a matter committed to the discretion of the district attorney, a part of the executive branch of government.

Thus, *Esteybar* and *Tenorio* stand as clear and explicit authority for the proposition that the decision of when and against whom criminal proceedings are to be instituted is one to be made by the executive, to wit, the district attorney.

The procedure permitting private individuals to institute criminal proceedings without approval of the district attorney when coupled with the prosecutor's inability, because of sections 1385 and 1386, after the complaint is filed to control when and if the prosecution should proceed, improperly impairs the discretion of the district attorney and encroaches upon the executive power in violation of article III, section I of the California Constitution.

In fact, the existence of a discretionary power in the district attorney to control the institution of criminal proceedings is a necessary prerequisite to the constitutional validity of the requirement that the district attorney seek court approval for abandoning a prosecution as required by sections 1385 and 1386 of the Penal Code.

In the federal jurisdiction a similar result obtains. Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment be signed by the attorney for the Government. Rule 48(a) requires leave of court to dismiss a prosecution.

In *United States* v. *Cox,* 342 F.2d 167, a federal grand jury attempted

to order the United States Attorney to prepare certain indictments and when he refused the district court made such an order. The United States Attorney refused to comply with the order and was held in contempt.

The circuit court in reversing the order of contempt held that the requirement of the United States Attorney's signature on an indictment was for the purpose of evidencing his approval of the institution of criminal proceedings and that the United States Attorney had the discretion to permit or not permit the bringing of an indictment. The court further explicitly held that without the signature the indictment was invalid and that under the doctrine of the separation of powers a court had no authority to interfere with the United States Attorney's decision to sign or not sign.

Finally the court concluded: "If it were not for the discretionary power given to the United States Attorney to prevent an indictment by withholding his signature there might be doubt as to the constitutionality of the requirement of Rule 48 for leave of court for a dismissal of a pending prosecution."

*Defendant's Right to Due Process of Law.*

The due process clause of both United States and California Constitutions is a bar to the deprivation of liberty except by the regular administration of the law and in accordance with general rules designed to protect individual rights.

Government Code section 26501 provides in part: *"The district attorney shall institute proceedings* before magistrates for the arrest of persons charged with or reasonably suspected of public offenses *when he has information that such offenses have been committed."* (Italics added.)

In *Taliaferro* v. *Locke,* 182 Cal.App.2d 752, at pages 755-756 [6 Cal.Rptr. 813], the court stated: "As concerns the enforcement of the criminal law the office of district attorney is charged with grave responsibilities to the public. These responsibilities demand integrity, zeal and conscientious effort in the administration of justice under the criminal law. . . . Nothing could be more demoralizing to that effort or to efficient administration of the criminal law in our system of justice than requiring a district attorney's office to dissipate its effort on personal grievance, fanciful charges and idle prosecution."

Thus the theme which runs throughout the criminal procedure in this state is that all persons should be protected from having to defend against frivolous prosecutions and that one major safeguard against such prosecu-

tions is the function of the district attorney in screening criminal cases prior to instituting a prosecution.[8]

Due process of law requires that criminal prosecutions be instituted through the regular processes of law. These regular processes include the requirement that the institution of any criminal proceeding be authorized and approved by the district attorney.

The complaints filed by Pellegrino against Bishop without the district attorney's authorization were nullities. The municipal court lacked discretion and in fact jurisdiction to do anything in the matter except to dismiss.

By this holding we do not mean to imply that criminal complaints need take any different form than they presently do, but only that their filing must be approved, authorized or concurred in by the district attorney before they are effective in instituting criminal proceedings against an individual.

## APPOINTMENT OF A SPECIAL PROSECUTOR

 The issue of the appointment of a special prosecutor is simply an outgrowth of the filing of the complaints in the first instance without the concurrence of the district attorney.

---

[8]The American Bar Association Project on Standards for Criminal Justice in its standards relating to the prosecution function, approved draft 1971, contain the following: "(2.1) Prosecution authority should be vested in a public official. The prosecution function should be performed by a public prosecutor who is a lawyer subject to the standards of professional conduct and discipline. 3.4 Decision to charge. (a) The decision to institute criminal proceedings should be initially and primarily the responsibility of the prosecutor. (b) The prosecutor should establish standards and procedures for evaluating complaints to determine whether criminal proceedings should be instituted. (c) Where the law permits a citizen to complain directly to a judicial officer or the grand jury, the citizen complainant should be required to present his complaint for prior approval to the prosecutor and the prosecutor's action or recommendation thereon should be communicated to the judicial officer or grand jury." (Pp. 49, 83.)

The commentary to these standards states in part: "The concept that the state has a special interest in the prosecution of criminal cases which requires the presence of a professionally trained advocate arose during the formative period of American law. Earlier, in England, it had been assumed that prosecution was a matter for the victim, his family or friends. See SCHWARTZ, CASES AND MATERIALS ON PROFESSIONAL RESPONSIBILITY AND THE ADMINISTRATION OF CRIMINAL JUSTICE 4-5 (1962). The idea that the criminal law, unlike other branches of the law such as contract and property, is designed to vindicate public rather than private interests is now firmly established. The participation of a responsible public officer in the decision to prosecute and in the prosecution of the charge gives greater assurance that the rights of the accused will be respected than is the case when the victim controls the process.

"Whatever may have been feasible under conditions of the past, modern conditions require that the authority to commence criminal proceedings be vested in a professional, trained, responsible public official." (Pp. 49, 84.)

Had the district attorney approved of or instituted criminal proceedings against Bishop we can assume that he would have actively prosecuted the case and the controversy would not have arisen.

The fact that Bishop was to be a witness for the prosecution in the cases against Pellegrino and Stromstad would not have prevented the district attorney from acting as prosecuting attorney in the case against Bishop. It frequently occurs that a district attorney is called upon to and does prosecute persons who are or have been prosecution witnesses.

Witnesses for the prosecution, including the victim himself are not parties to a criminal prosecution and the action is not brought in their interests as individuals or on their behalf. Thus the relationship between them and the district attorney is not that of attorney and client. (Gov. Code, § 26500.)

The municipal court judge's finding that the district attorney was disqualified could only be premised on the fact that the district attorney had expressed the opinion that the prosecution of Bishop lacked merit and there was no credible evidence upon which to base said prosecution.

The district attorney's function is quasi-judicial in nature (*Pearson v. Reed*, 6 Cal.App.2d 277, 286 [44 P.2d 592]), and as we have already stated, he is vested with discretionary power in determining whether to prosecute in any particular case. An unbroken line of cases in California has recognized this discretion and its insulation from control by the courts through the writ of mandamus. (See *Board of Supervisors v. Simpson*, 36 Cal.2d 671 [227 P.2d 14]; *People v. Vatelli*, 15 Cal.App.3d 54, 58, 59 [92 Cal.Rptr. 763], and cases cited.)

The district attorney's conduct in investigating and evaluating the charges and countercharges was in keeping with the responsibility of his office. Nothing in that conduct furnished any legal basis for his disqualification and the municipal court judge erred in declaring him disqualified.

The municipal court judge here recognized that he had no power to compel the district attorney to prosecute and he did not attempt directly to do so. He did, however, by purporting to appoint a "special prosecutor" to supplant the district attorney, attempt indirectly to accomplish the same result. In effect, the judge himself became the prosecutor by overriding the judgment of the district attorney and ordering the prosecution to proceed. The so-called "special prosecutor" became the deputy of the judge in attempting to press forward with the prosecution in clear violation of the doctrine of the separation of powers. (Cal. Const., art. III, § 1.)

Except for the situation where the district attorney is himself charged with a crime, his failure to act, even if improperly or corruptly motivated, is not a matter for the courts. In the final analysis, the district attorney, like a judge, is answerable to the electorate for the manner in which he conducts his office.

Aside from the power of the electorate to remove the district attorney, the latter's performance is subject to the supervision of the Attorney General. (Cal. Const., art. V, § 21; *County of Tulare* v. *City of Dinuba,* 205 Cal. 111, 116-117 [270 P. 201]; Gov. Code, § 12550.)

Nothing in the Constitution or statute law of this state gives to any court a similar power of supervision or control over the official conduct of the district attorney.

Government Code section 12553[9] gives the Attorney General power to appoint special counsel to prosecute in case of the disqualification of a district attorney. That statute gives no similar power to any court and by implication negates the existence of such power.

The superior court properly ordered vacation of the municipal court's orders appointing Mr. Siple as "special prosecutor."

The writ of mandate is modified to direct the respondent Ventura Municipal Court to dismiss complaints Nos. TC 2487 and TC 2488.

As modified, the order is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 12, 1972.

---

[9]Government Code section 12553 provides: "If a district attorney is disqualified to conduct any criminal prosecution within the county, the Attorney General may employ special counsel to conduct the prosecution. The attorney's fee in such case is a legal charge against the State."