Filed 8/11/14   Reposted to provide appendix

# IN THE SUPREME COURT OF CALIFORNIA

JEWERELENE STEEN,                                )
                                                 )
                 Petitioner,                     )
                                                 )                    S174773
          v.                                     )
                                                 )              Los Angeles County
APPELLATE DIVISION, SUPERIOR                     )              Super. Ct. No. 6200307
COURT OF LOS ANGELES COUNTY,                     )
                                                 )              App. Div. No. BR046020
                 Respondent;                     )
                                                 )                 Ct. App. 1/2
THE PEOPLE,                                       )
                                                 )
                 Real Party in Interest.         )
_____         )

        In this case we consider the validity of a misdemeanor complaint issued by a superior court clerk under the authority of Penal Code section 959.1, subdivision (c) (hereafter section 959.1(c)).  The statute provides that "[a] magistrate or court is authorized to receive and file an accusatory pleading in electronic form if," among other things, "[t]he accusatory pleading is issued in the name of, and transmitted by, a public prosecutor or law enforcement agency . . . , *or by a clerk of the court with respect to complaints issued for the offenses of failure to appear, pay a fine, or comply with an order of the court*."  (§ 959.1(c) & (c)(1), italics added.)  Petitioner, who pled no contest to the misdemeanor of willfully violating her written promise to appear (Veh. Code, § 40508, subd. (a)), charged in a complaint electronically generated by a court clerk, now challenges the ensuing

conviction. Invoking the California Constitution's separation of powers (Cal. Const., art. III, § 3) and due process (*id.*, art. I, §§ 7, subd. (a), 15) clauses, petitioner contends the complaint was void because it was not issued by an executive branch officer with prosecutorial authority. Based on that premise, petitioner further contends the complaint did not timely commence a prosecution for purposes of the statute of limitations. (Pen. Code, § 802, subd. (a).)

We conclude petitioner is not entitled to relief. A legislative enactment that permitted a judicial branch employee to commence criminal prosecutions without the prosecutor's approval would present a serious constitutional question by impairing a core function of the executive branch — the discretionary power to initiate criminal prosecutions. (See *People v. Birks* (1998) 19 Cal.4th 108, 134.) But section 959.1(c) does not expressly or by necessary implication permit the clerk to commence prosecutions without the prosecutor's approval, and we must construe the statute in a manner that avoids doubts as to its constitutional validity. (*People v. Leiva* (2013) 56 Cal.4th 498, 506–507; *Young v. Haines* (1986) 41 Cal.3d 883, 898.) Furthermore, the prosecutor may validate a complaint filed by someone else by approving, authorizing or concurring in it. (*People v. Municipal Court* (1972) 27 Cal.App.3d 193, 206 (*Pellegrino*).) Here, the relevant prosecutorial agency has, through an established practice, implicitly approved in advance the clerk's routine issuance of complaints for the offense of failure to appear, including the complaint against petitioner. Accordingly, the complaint was valid and the prosecution timely commenced. We therefore deny the petition for writ of mandate.

## I. BACKGROUND

On June 8, 2002, a police officer cited petitioner Jewerelene Steen for three infractions of the Vehicle Code: driving a vehicle with an expired registration (Veh. Code, § 4000, subd. (a)(1)), driving without a license (*id.*, § 12500,

2

subd. (a)), and failing to provide evidence of financial responsibility (*id.*, § 16028, subd. (a)).  Petitioner signed a written promise to appear in court on or before July 23, 2002, to answer for those infractions (see *id.*, § 40500) and was thereupon released.  When petitioner failed to appear, the clerk of the court for the Los Angeles County Superior Court, on August 13, 2002, electronically generated and filed against her a complaint for the misdemeanor of willfully violating her promise to appear.  (*Id.*, § 40508, subd. (a).)  The complaint was one of thousands created by the clerk on a weekly basis by means of a computer program that matches citation data from county traffic record information systems with data about delinquencies entered by the court's deputy clerks.

About five years later, on July 27, 2007, petitioner appeared with counsel before a court commissioner.  Respondent informs us that the vast majority of offenses charged under section 959.1(c) are, with the defendants' consent, treated as infractions and punished with fines.  (See Pen. Code, § 17, subd. (d)(2).) Instead of consenting to such a disposition, petitioner demurred to the complaint. (Pen. Code, § 1004, subds. 1, 5.)  The court lacked jurisdiction, she argued, because the clerk has no authority to commence a criminal prosecution and because section 959.1(c), if read to confer such authority, unconstitutionally impairs the separation of powers and due process.  The People, represented by a deputy of the Los Angeles City Attorney's Office, criminal division, offered a constitutional defense of the statute.  Asked by the court whether the People approved and concurred in the complaint against petitioner, the deputy responded that the People's "actions . . . demonstrate[] that we approve and concur of this complaint as well as all the other complaints that are filed in all the other cases in this courthouse.  We know the practice exists where a complaint is generated via a notice to appear" and "[w]e have not asked the Court and/or its clerk to stop."  In rebuttal, petitioner argued that the People had needed to concur in the complaint

3

against her at the time it was filed and that it was "too late for the City Attorney to concur" five years later at the hearing.

Rejecting petitioner's arguments, the court overruled the demurrer, accepted her plea of no contest, found her guilty of violating Vehicle Code section 40508, subdivision (a), denied probation, and sentenced her to 50 days in county jail with six days of credit. The appellate division affirmed petitioner's conviction, and the Court of Appeal denied her petition to transfer. Having no right to petition for review from the order denying transfer (Cal. Rules of Court, rule 8.500(a)(1)), petitioner invoked our original jurisdiction by filing the instant petition for writ of mandate to compel the appellate division to vacate the conviction. We took jurisdiction by issuing orders to show cause directing real party in interest the People, and also respondent appellate division,[1] to show cause before this court why the relief petitioner seeks should not be granted.

## II. DISCUSSION

Petitioner, as noted, challenges her conviction as impairing the separation of powers (Cal. Const., art. III, § 3), denying her due process (*id.*, art. I, §§ 7, subd. (a), 15) and violating the statute of limitations (Pen. Code, § 802, subd. (a)). We

---

[1] Courts have no beneficial interest in the outcome of the cases they decide and are not entitled to litigate the correctness of their rulings in a reviewing court. (See *Municipal Court v. Superior Court (Gonzalez)* (1993) 5 Cal.4th 1126, 1129; *Matter of De Lucca* (1905) 146 Cal. 110, 113.) We have, however, occasionally permitted the respondent courts in writ proceedings to address the legality of their challenged procedures. (E.g., *People v. Superior Court (Lavi)* (1993) 4 Cal.4th 1164, 1170 [considering whether respondent court's master calendar department operated as such for purposes of Code Civ. Proc., § 170.6]; *Hernandez v. Municipal Court* (1989) 49 Cal.3d 713, 715–716 [considering whether respondent court's practice of transferring criminal cases among branch courthouses was consistent with the vicinage requirement of the 6th Amend. of the U.S. Const.].)

4

address petitioner's separation of powers argument first, as our analysis of it informs the remainder of our analysis.

### A. Separation of Powers.

Petitioner contends section 959.1(c) impairs the separation of powers by permitting the clerk, a judicial branch employee, to issue misdemeanor complaints. Reasoning that California law entrusts the initiation of criminal proceedings exclusively to executive branch officers with prosecutorial authority, petitioner argues that section 959.1(c) is unconstitutional to the extent it provides otherwise and that the clerk's complaint is accordingly void. We conclude the statute, properly and narrowly construed, does not permit the clerk to initiate criminal proceedings without the prosecutor's approval and is thus constitutional, and that the complaint against petitioner is therefore valid.

Penal Code section 959.1 was enacted in 1988 to permit prosecutors and law enforcement agencies to commence criminal prosecutions by filing electronic pleadings. (Stats. 1988, ch. 516, § 1, p. 1945.) The language that engendered the present dispute by assigning a role to the clerk was added to the statute in 1990 by Assembly Bill No. 3168 (1989–1990 Reg. Sess.). (See Stats. 1990, ch. 289, § 1, p. 1561 [enacting Assem. Bill No. 3168].) Presently, the statute provides that "a criminal prosecution may be commenced by filing an accusatory pleading in electronic form with the magistrate or in a court having authority to receive it" (§ 959.1, subd. (a)) and sets out conditions a court must satisfy in order to accept electronic pleadings. Section 959.1(c), with the 1990 amendment set out here in italics, provides that "[a] magistrate or court is authorized to receive and file an accusatory pleading in electronic form if all of the following conditions are met: [¶] (1) The accusatory pleading is issued in the name of, and transmitted by, a public prosecutor or law enforcement agency . . . , *or by a clerk of the court with*

5

*respect to complaints issued for the offenses of failure to appear, pay a fine, or comply with an order of the court*." (Italics added.)

In describing the role the clerk is to play with respect to accusatory pleadings, the language added to section 959.1(c) in 1990 is somewhat ambiguous. Considering that language in context and in light of the legislative history, it appears the Legislature intended to permit superior court clerks to generate, electronically and automatically, accusatory pleadings charging certain offenses that arise out of court proceedings and are thus necessarily based on facts that lie uniquely within the clerk's knowledge.

Solely as a matter of form, and putting other considerations aside for the moment, the 1990 language might conceivably be read to permit the accusatory pleadings designated in section 959.1(c) to be "issued . . . by a clerk," to be "issued in the name of . . . a clerk," to be "transmitted . . . by a clerk" (*ibid.*), or to permit all three readings. Closer analysis, however, leaves only one reasonable interpretation: Clerks may "issue[]" — that is, generate electronically — the specified complaints. We may reasonably assume the Legislature did not intend for complaints to issue "in the name of" the clerk because it has repeatedly declared that "[a] criminal action is prosecuted in the name of the people of the State of California, as a party" (Pen. Code, § 684; see Gov. Code, § 100, subd. (b)),[2] and nothing in the history of Assembly Bill No. 3168 suggests the Legislature intended to modify that rule by permitting prosecutions to be brought in the name of a judicial branch employee with no statutory power to represent the People in criminal prosecutions. (Cf. Gov. Code, § 26500 [the public prosecutor

_____

[2]     "The style of all process shall be 'The People of the State of California,' and all prosecutions shall be conducted in their name and by their authority." (Gov. Code, § 100, subd. (b).)

"shall attend the courts, and within his or her discretion shall initiate and conduct on behalf of the people all prosecutions for public offenses"].)  Alternatively, to read section 959.1(c) as providing that the clerk may only "transmit[]" pleadings to the court — namely to himself or herself — for filing has no apparent practical significance.  If one rejects those two implausible readings, one is necessarily left with the conclusion that the bill must have been intended to permit the clerk to "issue[]," that is to generate, the specified complaints.

This conclusion is consistent with the statute's legislative history.  Originally proposed by the Association of Municipal Court Clerks of California and unanimously adopted by both houses of the Legislature, Assembly Bill No. 3168 was presented as a measure to "increase court efficiency by streamlining the filing of pleadings by court clerks" through taking advantage of "automated systems that eliminate the need for hard paper."  (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 3168 (1989–1990 Reg. Sess.) Apr. 17, 1990, p. 1.)  Legislative committee reports explained that "[e]xisting law permits accusatory pleadings to be filed electronically by prosecutors and law enforcement agencies. . . .  [¶]  . . . [¶]  This bill would allow court clerks to file electronically complaints issued for the offenses of failure to appear, failure to pay a fine, or failure to comply with an order of the court."  (Sen. Rules Com., Analysis of Assem. Bill No. 3168 (1989–1990 Reg. Sess.) June 21, 1990, p. 1; see Sen. Com. on Judiciary, Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 3168 (1989–1990 Reg. Sess.) June 19, 1990, pp. 1–2 [same].)  The reports' imprecise use of the word "file" does not obscure the Legislature's understanding that the bill would allow clerks to perform a function previously performed only by executive branch officers:  the generation of electronic pleadings.  There was no need in 1990 to amend section 959.1(c) to permit clerks to "file" electronic pleadings, as the Legislature had already granted that permission in 1988.  (See former § 959.1(c), as enacted by Stats. 1988,

7

ch. 516, § 1, p. 1945 ["A magistrate or court is authorized to receive and file an accusatory pleading in electronic form"].)

The potential constitutional issue raised by permitting court clerks to generate accusatory pleadings did not go entirely unnoticed in the Legislature, but it did go without documented analysis or resolution. While Assembly Bill No. 3168 was under consideration, the Legislative Counsel advised its author that the bill "might be . . . deemed to be unconstitutional as a violation of the separation of powers doctrine . . . ." (Legis. Counsel, letter to Assem. Member Robert Frazee regarding Assem. Bill No. 3168 (1989–1990 Reg. Sess.) Feb. 5, 1990, p. 1.) Five months later, however, the Legislative Counsel informed the Governor that "the bill, if chaptered, will be constitutional." (Legis. Counsel, letter to Gov. George Deukmejian, July 13, 1990.) In neither letter did the author attempt to analyze the constitutional issue,[3] and the legislative history does not otherwise mention it.

We undertake that analysis now. The separation of powers doctrine owes its existence in California to article III, section 3 of the state Constitution, which provides that "[t]he powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." We have described the doctrine as limiting the authority of one of the three branches of government to arrogate to itself the core functions of another branch. Although the doctrine does not prohibit one branch from taking action that might affect another, the doctrine

---

[3] In his letter to the bill's sponsor, the Legislative Counsel cited without comment two judicial opinions noting that the charging of criminal cases lies within the exclusive control of the executive branch. (Legis. Counsel, letter to Assem. Member Robert Frazee, *supra*, p. 1, citing *People v. Superior Court (Greer)* (1977) 19 Cal.3d 255, 262, and *People v. Superior Court (Felmann)* (1976) 59 Cal.App.3d 270, 275–276.)

is violated when the actions of one branch defeat or materially impair the inherent functions of another. (See *In re Prather* (2010) 50 Cal.4th 238, 254; *Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 297–298.)

California law leaves no doubt that the initiation of criminal proceedings is a core, inherent function of the executive branch. The state Constitution, in an article defining the powers and responsibilities of the executive branch and its principal officers, appoints the Attorney General as "the chief law [enforcement] officer of the State" with "direct supervision over every district attorney . . . ." (Cal. Const., art. V, § 13; see Gov. Code, § 12550 ["The Attorney General has direct supervision over the district attorneys" and "may, where he deems it necessary, take full charge of any investigation or prosecution of violations of law of which the superior court has jurisdiction"].) "The district attorney," in turn, "is the public prosecutor, except as otherwise provided by law," who "shall attend the courts, and within his or her discretion shall initiate and conduct on behalf of the people all prosecutions for public offenses." (Gov. Code, § 26500.) Moreover, "all prosecutions shall be conducted in [the] name [of the People of California] and by their authority" (*id.*, § 100, subd. (b)), in other words by the designated executive branch officer. These constitutional and statutory provisions have led us to hold that "[t]he prosecution of criminal offenses on behalf of the People is the sole responsibility of the public prosecutor," who "ordinarily has sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 451; see *People v. Eubanks* (1996) 14 Cal.4th 580, 588–589.)

Against that background we turn to the dispositive question: Does section 959.1(c) defeat or materially impair a core, inherent function of the executive branch by permitting the clerk, a judicial branch employee, to issue complaints for

9

the offenses of failure to appear, pay a fine, or comply with an order of the court? The question reveals a critical ambiguity in the statute: If the Legislature had intended to validate criminal complaints issued by the clerk without the approval of the executive branch prosecutor responsible for initiating criminal prosecutions, then the statute would be difficult or impossible to reconcile with the separation of powers. On the other hand, if the Legislature did not intend to validate complaints issued by the clerk without the prosecutor's approval, then the statute, as we explain below, would be constitutional. When an ambiguous statute raises serious constitutional questions, our task is not to resolve such questions in the abstract but rather to " ' "endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity" ' " (*People v. Leiva*, *supra*, 56 Cal.4th 498, 506–507, quoting *Young v. Haines*, *supra*, 41 Cal.3d 883, 898), even while, as in every exercise of statutory interpretation, seeking to effectuate the Legislature's purpose consistently with the language it chose.

To construe section 959.1(c) as permitting the clerk to issue valid complaints only with the prosecutor's approval serves these interpretative goals. Such a construction is consistent with the language of the statute, effectuates the Legislature's purpose, and avoids doubts concerning the statute's constitutional validity. The language of section 959.1(c) does not expressly or by necessary implication authorize the clerk to initiate criminal prosecutions without the prosecutor's approval, and nothing in the legislative history indicates otherwise. Assembly Bill No. 3168 was presented as a proposal to amend a statute governing *electronic filing*; nowhere does the history suggest a proposal to reassign prosecutorial authority from the executive branch to the judicial — a step that would likely have provoked significant recorded debate. Moreover, to acknowledge the prosecutor may withhold approval of complaints under section 959.1(c) need not impair the Legislature's declared goal of increasing court

10

efficiency, because the Legislature could reasonably have assumed prosecutorial agencies and superior courts would cooperate in determining how to implement the statute. A prosecutorial agency might, for example, ask the clerk to issue complaints in some or all cases subject to section 959.1(c), ask the clerk to stop issuing complaints altogether, or closely coordinate the process to reflect the People's discretionary enforcement priorities. Finally, to recognize that section 959.1(c) does not authorize the clerk to issue complaints without the prosecutor's approval obviates the separation of powers problem: By withholding approval, the prosecutor effectively prevents the clerk from issuing a valid complaint. These circumstances reveal no material impairment or defeat of executive branch power.[4]

Petitioner suggests a separation of powers problem would arise if the clerk issued a complaint without the prosecutor's approval and the court thereafter denied the People's motion to dismiss. This scenario, petitioner suggests, might lead to misdemeanor convictions being entered without executive branch involvement. Because nolle prosequi is abolished in California, the prosecutor may not unilaterally abandon a prosecution (Pen. Code, § 1386); only the court may dismiss a criminal charge (*id.*, § 1385, subd. (a); see *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 512). Those rules, however, presuppose a valid complaint: "[T]he existence of a discretionary power in the district attorney to control the institution of criminal proceedings is a necessary prerequisite to the constitutional validity of the requirement that the district attorney seek court

---

[4]    We note that after a valid complaint has been filed under section 959.1(c), the prosecutor remains solely responsible for the conduct of the case (Gov. Code, § 26500) and free to exercise postfiling discretion by moving to dismiss or reduce the charges (Pen. Code, § 1385, subd. (a); cf. *id.*, § 17, subd. (d)(2)).

11

approval for abandoning a prosecution as required by sections 1385 and 1386 of the Penal Code." (*Pellegrino*, *supra*, 27 Cal.App.3d 193, 204.) Thus, it has been held, purported criminal complaints filed by private persons are "nullities" as to which the court "lack[s] discretion and in fact jurisdiction to do anything in the matter except to dismiss." (*Id.* at p. 206.) We see no reason why a different rule would apply to a complaint filed by the clerk under section 959.1(c) without the prosecutor's approval.

### B. Due Process.

While the prosecutor's decision here to approve the clerk's issuance of complaints under section 959.1(c) obviates petitioner's separation of powers argument, it does not necessarily answer petitioner's argument under the state Constitution's due process clauses (Cal. Const., art. I, §§ 7, subd. (a), 15). Due process, she contends, requires a case-specific, discretionary charging decision by the prosecutor at the time the complaint is filed. We conclude the argument lacks merit in the present context.

Petitioner relies mainly on *Pellegrino*, *supra*, 27 Cal.App.3d 193. In that case two private citizens, Pellegrino and Bishop, filed in the municipal court documents purporting to be criminal complaints against each other for assaultive conduct during a July 4th celebration. When the prosecutor refused to concur in Pellegrino's complaint, the municipal court entered orders disqualifying the district attorney and appointing a special prosecutor. The Court of Appeal vacated those orders and dismissed the complaint. Relying on both the separation of powers doctrine and the right to due process, the court held that criminal complaints "must be approved, authorized or concurred in by the district attorney before they are effective in instituting criminal proceedings against an individual" (*id.* at p. 206). This conclusion left Pellegrino's complaint against Bishop a

12

"nullit[y]" (*ibid.*) but validated Bishop's complaint against Pellegrino, in which the prosecutor had concurred (*id.* at pp. 202–203). We need not reiterate the separation of powers principles that support this conclusion.

Concerning due process, the court in *Pellegrino*, *supra*, 27 Cal.App.3d 193, made two observations of relevance here. First, the court noted, "[d]ue process of law requires that criminal prosecutions be instituted through the regular processes of law. These regular processes include the requirement that the institution of any criminal proceeding be authorized and approved by the district attorney." (*Id.* at p. 206.) This observation is self-evidently correct and entirely consistent with recognizing the validity of complaints approved by the prosecutor and issued by the clerk in accordance with section 959.1(c).

The *Pellegrino* court also observed that "the theme which runs throughout the criminal procedure in this state is that all persons should be protected from having to defend against frivolous prosecutions and that one major safeguard against such prosecutions is the function of the district attorney in screening criminal cases prior to instituting a prosecution." (*Pellegrino*, *supra*, 27 Cal.App.3d at pp. 205–206.) In that statement, the court correctly identified an important general concern underlying the rules of criminal procedure and responded appropriately to a lower court's erroneous refusal to dismiss a purported complaint the prosecutor had consistently disapproved, filed by a private party with no constitutional or statutory power to represent the People. The same statement does not compel the conclusion that the prosecutor is forbidden to approve the filing of charges in an entire category of relatively minor offenses, such as the three categories of offenses subject to section 959.1(c). We have, in fact, held the prosecutor may do so.

In *Sundance v. Municipal Court* (1986) 42 Cal.3d 1101 (*Sundance*), the court addressed a variety of claims arising from the mass issuance in Los Angeles

13

County of citations for public inebriation. Even while granting relief to the plaintiffs on some theories, the court rejected plaintiffs' claim that due process forbade the city attorney to file such charges routinely and "without attempting to screen out cases that could not be successfully prosecuted." (*Id.* at p. 1132.) We reasoned that, except in cases of selective or vindictive prosecution, "[p]rosecutors have broad decisionmaking power in charging crimes" and that " '[t]he judiciary historically has shown an extraordinary deference to the prosecutor's decision-making function.' " (*Sundance*, at p. 1132, quoting Gershman, Prosecutorial Misconduct (1985) ch. 4, pp. 4–3 to 4–6.) This principle sufficiently justified rejecting the claim, as "[p]laintiffs [had] cite[d] no authority for the proposition that the prosecutor's failure to exercise sufficient, or indeed any, discretion in determining whether to file charges constitutes a denial of due process." (*Sundance*, at p. 1132.)

The best practice under section 959.1(c) might well be for the clerk of the court to furnish the responsible prosecutorial agency in advance with a list of complaints proposed to be issued under the statute and for the agency to indicate its explicit approval or disapproval of each. But we are aware of no authority barring a prosecutor from approving in advance, even implicitly through an established practice such as the Los Angeles City Attorney has followed, the clerk's routine issuance of complaints in cases subject to section 959.1(c). To proceed in this way reflects the practical consideration that such offenses — failures to appear, pay a fine, or comply with an order of the court —arise out of judicial proceedings and are thus necessarily based on facts uniquely within the clerk's knowledge. In any event, the judiciary cannot compel the prosecutor to review each such offense on an individual basis. The deference the judicial branch owes to the executive branch's charging decisions precludes that sort of review, and due process does not require it. (See *Sundance*, *supra*, 42 Cal.3d 1101, 1132.)

14

**C. Statute of Limitations.**

Finally, petitioner contends her conviction cannot stand because the prosecution was not commenced within the statute of limitations. A prosecution for the misdemeanor of which she was convicted (Veh. Code, § 40508, subd. (a) [willfully violating written promise to appear]) must be "commenced within one year after commission of the offense" (Pen. Code, § 802, subd. (a)). As relevant here, the "prosecution for an offense is commenced" (*id.*, § 804) when a "complaint is filed charging a misdemeanor or infraction" (*id.*, § 804, subd. (b)). The misdemeanor complaint in this case was filed on August 13, 2002, and specifically alleged that petitioner had committed the charged offense on July 23, 2002, a date within the statutory limitations period.

Invoking the same arguments discussed and rejected above, petitioner contends the complaint generated by the clerk under section 959.1(c) was initially void and thus did not commence a prosecution until the People expressly concurred in it at the hearing in 2007, nearly five years after the statute of limitations had expired. Our conclusion that the complaint was valid when issued compels the rejection of this claim, as well. To rephrase the same conclusion as a matter of statutory interpretation, a "complaint" issued by the clerk under Penal Code section 959.1(c) with the prosecutor's approval is a "complaint" (Pen. Code, § 804, subd. (b)) that commences a prosecution for purposes of the statute of limitations.[5]

---

[5] Because we hold the complaint timely commenced a prosecution, we need not address the People's alternative contentions that defendant waived the statute of limitations by pleading no contest (see generally *People v. Williams* (1999) 21 Cal.4th 335, 345) and that a prosecution was timely commenced by the issuance of an arrest warrant (see Pen. Code, § 804, subd. (d)).

15

### III. DISPOSITION

The petition for writ of mandate is denied.

**WERDEGAR, J.**


**WE CONCUR:**


**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**CHIN, J.**
**CORRIGAN, J.**

## CONCURRING OPINION BY LIU, J.

There is much in today's opinion I agree with.  I agree that *Sundance v. Municipal Court* (1986) 42 Cal.3d 1101 forecloses petitioner's due process claim. (Maj. opn., *ante*, at pp. 13–14.)  As to petitioner's separation of powers claim, I agree that "the initiation of criminal proceedings is a core, inherent function of the executive branch" (*id.* at p. 9); that Government Code section 100, subdivision (b) makes clear that "all prosecutions shall be conducted in [the] name [of the People of California] and by their authority"; that Penal Code section 684 similarly says "[a] criminal action is prosecuted in the name of the people of the State of California, as a party"; and that "the Legislature did not intend for complaints to issue 'in the name of' the clerk" when it enacted Penal Code section 959.1, subdivision (c).  (Maj. opn., *ante*, at p. 6.)

The problem, however, is that the complaint in this case was issued by a court clerk, an official with no authority to prosecute a criminal action in the name of the People of California.  Although the signature of the "DECLARANT AND COMPLAINANT" is hard to make out, the parties agree that the signature belongs to a court clerk.  Nowhere on the complaint does there appear the name of a prosecuting official.  (The complaint is reprinted at the end of this opinion.  The initials "LAPD" appear above a line that says, "LAW ENFORCEMENT AGENCY FILING COMPLAINT," but that seems to indicate that the Los

Angeles Police Department issued the underlying traffic citation. The LAPD is not a prosecutorial entity.)

According to declarations of a senior administrator of the Los Angeles County Superior Court, the court clerk issues approximately 8,000 similar complaints for failure to appear every week. These complaints are automatically generated from data entered by deputy clerks or their staff. The data identify which cases are delinquent, and every Tuesday night, a computer gathers the data from the prior week and electronically generates thousands of failure-to-appear complaints against defendants throughout the county. The complaints are also automatically transmitted to the Department of Motor Vehicles and to the Countywide Warrant System, a database of wanted persons in Los Angeles County. The signature on each complaint is electronically generated, and each complaint is filed as a misdemeanor. When a defendant comes to court for arraignment, the charge is typically reduced to an infraction with the prosecutor's and defendant's mutual consent. But if the defendant does not consent, the case may result in a misdemeanor conviction and jail time, as in this case. Each complaint exposes the defendant to nearly $400 in fines, fees, and penalties. In the 2007–2008 fiscal year, revenue from such complaints exceeded $75 million.

It is rare for this court to hear an appeal in a failure-to-appear case. But, as the numbers suggest, this is one of the most common ways that ordinary citizens come into contact with the criminal justice system. The official process that leads to a misdemeanor complaint is, as far as I can tell, entirely automated after a deputy clerk enters data noting a person's failure to appear for a traffic citation. At no point does a prosecuting official engage in any review, exercise any discretion, or otherwise have any role. I do not see how this practice can be squared with the principle of separation of powers.

2

Although separation of powers doctrine under the California Constitution is not identical to its federal counterpart (see *Marine Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1, 28–31), the principle throughout American history has reflected the concern that "[t]he accumulation of all powers, legislative, executive, and judiciary, in the same hands, . . . may justly be pronounced the very definition of tyranny." (Madison, The Federalist No. 47 (J. Cooke ed. 1961) p. 324; see *Parker v. Riley* (1941) 18 Cal.2d 83, 89.) This does "not mean that these departments ought to have no *partial agency* in, or no *controul* over, the acts of each other." (Madison, at p. 325; see *Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 297–298.) But it does mean that the core functions of each branch may not be allocated to or usurped by another branch. Thus, for example, "[t]he magistrate in whom the whole executive power resides cannot of himself . . . administer justice in person, though he has the appointment of those who do administer it. *The judges can exercise no executive prerogative*, though they are shoots from the executive stock . . . ." (Madison, at p. 326, italics added.)

Separation of powers protects liberty not only by creating checks and balances, but also by maintaining clear lines of political accountability. "The diffusion of power carries with it a diffusion of accountability." (*Free Enterprise Fund v. Public Company Accounting Oversight Bd.* (2010) 561 U.S. 477, __ [130 S.Ct. 3138, 3155].) When a governmental arrangement blurs the lines of accountability by unduly diminishing the executive's oversight, it "subverts the [executive's] ability to ensure that the laws are faithfully executed—as well as the public's ability to pass judgment on his efforts." (*Ibid.*)

This concern is not merely theoretical in the context here. Imagine how things would look if the Los Angeles City Attorney or his designate had to sign his name as the "DECLARANT AND COMPLAINANT" on each of the 8,000

3

failure-to-appear complaints issued to Los Angeles County residents each week. That's over 400,000 complaints each year. Given the mass processing of these complaints, it is all but certain that some fraction of the charges will be found erroneous or will otherwise result in dismissal, but not until each defendant has been put to significant hassle or expense. Wouldn't the prospect of disgruntled citizens on such a scale induce a degree of discretion or oversight before an electorally accountable official is willing to affix his name to a complaint? And even if not, shouldn't each complaint — *as with any other criminal complaint* — be issued in a form that entitles the citizenry to judge whether their elected law enforcement officials are setting priorities and allocating resources in an optimal way?

Today's opinion says this problem of accountability is cured by the fact that a deputy city attorney told the superior court in this case that "we approve and concur of this complaint as well as all the other complaints that are filed in all the other cases in this courthouse. We know the practice exists where a complaint is generated via a notice to appear in which a person cited in the notice to appear has failed appear. We have not asked the Court and/or its clerk to stop." (See maj. opn., *ante*, at p. 3.) Even if I were to agree that a court clerk may sign a complaint as the declarant and complainant so long as the prosecutor approves (*id.* at p. 10), I do not believe an unsworn, post hoc statement made in the course of litigation suffices to confer such approval. As every elected official knows, there is often a difference in perception if not reality between deciding to undertake a course of action oneself and simply going along with or not stopping a course of action decided by others. This case might be different if the City Attorney had earlier adopted a policy statement that established or expressly approved the current practice. But no such statement appears here.

Although efficiency and good government are laudable objectives, they must be pursued in conformity with our constitutional structure. That structure requires accountability in all governmental functions, including the prosecutorial function (see *Morrison v. Olson* (1988) 487 U.S. 654, 697 (dis. opn. of Scalia, J.)), so that the citizenry may hold public officials to answer for error, abuse, or misguided priorities. Whether or not it is realistic to expect the City Attorney to review and approve each of the 400,000 failure-to-appear complaints issued every year in Los Angeles County, *his* decision to charge each defendant with a misdemeanor in the name of the People must be transparent and open to public judgment, not obscured by the signature of a court clerk.

This conclusion does not require invalidating the thousands of judgments under the current scheme that are not yet final today. In virtually all of those cases, even if the participation of a public prosecutor does not cure the separation of powers violation, we may readily conclude that the defendants likely suffered no prejudice. (See *Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 372 [nonretroactive application of a judicial decision may be justified by " '[c]onsiderations of fairness and public policy,' " including " 'retroactivity's effect on the administration of justice' "].) But lack of prejudice to individual defendants does not justify use of the present scheme going forward. If the City Attorney wants to continue automatically generating these complaints, the separation of powers problem is easily remedied. And if the remedy were to cause the City Attorney to hesitate, that would tend to confirm the present need for better alignment between prosecutorial action and accountability.

For the reasons above, I concur only in today's judgment.


LIU, J.

I CONCUR:  SIGGINS, J.*

*       Associate Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6

APPENDIX — see next page

# IN THE MUNICIPAL COURT OF LOS ANGELES-MET JUDICIAL DISTRICT

## County of Los Angeles, State of California

**COMPLAINT**

**NAME OF DEFENDANT**

STEEN, JEWERELENE

☐ MISDEMEANOR
☐ INFRACTION

| | VIOLATION DATE |
|---|---|
| P0741447 | 06-08-02 |

X

**RESIDENCE ADDRESS**

2703 S COCHRAN ST

**CITY/STATE**                    **ZIP**

LOS ANGELES, CA          900163319

04-10-38   JULY 23 2002

| VIOLATION (CODE SECTION, DESCRIPTION) | | |
|---|---|---|
| 40508A | 29 | 4000A1X 29 |
| 16028A | 29 | 12500A 29 |

**BUSINESS ADDRESS**

**CITY/STATE**                    **ZIP**

F   GY   BR 5 03   200 B   LA

**LOCATION OF VIOLATION**

6200307

THE UNDERSIGNED SAYS, UPON INFORMATION AND BELIEF, THAT THE ABOVE NAMED DEFENDANT WILFULLY AND UNLAWFULLY COMMITTED THE OFFENSE SET FORTH ABOVE IN THE ABOVE NAMED JUDICIAL DISTRICT, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, TO WIT:

4L0F622  CA   85   OLDS   4DR

X ☐ VIOLATION OF THE DEFENDANT'S WRITTEN PROMISE TO APPEAR OR A LAWFULLY GRANTED CONTINUANCE OF HIS PROMISE TO APPEAR IN COURT BEFORE A PERSON AUTHORIZED TO RECEIVE A DEPOSIT OF BAIL. FOR FURTHER AND SEPARATE CAUSES OF ACTION, BEING SEPARATE AND DIFFERENT OFFENSES BUT OF THE SAME CLASS OF CRIMES AS SET FORTH ABOVE, THE UNDERSIGNED SAYS: THAT IN THE ABOVE NAMED JUDICIAL DISTRICT, THE DEFENDANT NAMED ABOVE DID WILFULLY COMMIT SEPARATE AND DISTINCT OFFENSES AS SET FORTH ABOVE.

☐ FAILING TO PAY A LAWFULLY IMPOSED FINE.

☐ FAILING TO COMPLY WITH A LAWFUL ORDER OF THE COURT TO ATTEND A SCHOOL FOR TRAFFIC VIOLATORS.

☐ FAILING TO DELIVER PROOF OF CORRECTION.

AT THE TIME AND PLACE AND IN THE MANNER SET FORTH IN EXHIBIT "A" WHICH IS ATTACHED AND INCORPORATED HEREIN BY REFERENCE.

DEFENDANT IS TO BE ADMITTED TO **BAIL** IN THE AMOUNT OF
$ 1,174.00

1942   LAPD

REHM CAROL H JR

**CITATION/DOCKET NO.**

AUG 13 2002

EXECUTED ON
AT LOS ANGELES COUNTY, CALIFORNIA
I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

SIGNATURE   DECLARANT AND COMPLAINANT

1942

AGENCY ORI NO.      LAW ENFORCEMENT AGENCY FILING COMPLAINT

76W251  **TR1**  (AN)(REV. 5/94)

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Steen v. Appellate Division

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding** XXX
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S174773
**Date Filed:** August 11, 2014

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Patti Jo McKay

_____

**Counsel:**

Michael P. Judge and Ronald L. Brown, Public Defenders, Ilya Alekseyeff and John Hamilton Scott, Deputy Public Defenders, for Petitioner.

Frederick R: Bennett; Reed Smith, Paul D. Fogel and Dennis Peter Maio for Respondent.

Carmen A. Trutanich, City Attorney, Debbie Lew, Assistant City Attorney, Eric Shannon and Katharine H. Mackenzie, Deputy City Attorneys, for Real Party in Interest.

Steve Cooley, District Attorney (Los Angeles), Irene T. Wakabayashi, Head Deputy District Attorney, and Phyllis C. Asayama , Deputy District Attorney, for District Attorney of Los Angeles County as Amicus Curiae on behalf of Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

John Hamilton Scott
Deputy Public Defender
320 West Temple Street, Room 590
Los Angeles, CA 90012
(213) 974-3002

Paul D. Fogel
Reed Smith
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
(415) 543-8700

Katharine H. Mackenzie
Deputy City Attorney
500 City Hall East
200 N. Main Street
Los Angeles, CA 90012
(213) 473-6900