THOMPSON, J.,
Dissenting.—I respectfully dissent. The court’s decision today transforms Code of Civil Procedure section 170.6 (section 170.6) into “a concealed weapon to be used to the manifest detriment of the proper conduct of the judicial department.” (Austin v. Lambert (1938) 11 Cal.2d 73, 79 [77 P.2d 849].) ‘ ‘“We cannot permit a device intended for spare and protective use to be converted into a weapon of offense and thereby to become an obstruction to efficient judicial administration.’ [Citation.]” (Solberg v. Superior Court (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148] (Solberg).)
Judge King did not abuse his discretion by denying the district attorney’s motion to disqualify Judge Goethals under section 170.6. Judge King found the motion ensued from Judge Goethals’ misconduct rulings against the district attorney’s office. Judge King concluded the motion violated the separation of powers doctrine and undermined the independence of the judiciary. Judge King’s factual findings are supported by substantial evidence, his legal conclusion is correct, and his ruling was not arbitrary or capricious.
*921 Solberg does not compel a different conclusion. Solberg held section 170.6 is constitutional on its face, despite the potential for various types of abuses, including blanket challenge abuses. Solberg did not hold the statute was constitutional as applied, or that a district attorney’s blanket challenge abuse of the statute cannot violate the separation of powers doctrine. And in any event, Solberg can be fairly distinguished from this case, both legally and factually.
STANDARD OF REVIEW
We review an order denying a section 170.6 peremptory challenge for abuse of discretion. (Grant v. Superior Court (2001) 90 Cal.App.4th 518, 523 [108 Cal.Rptr.2d 825].) “The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court’s ruling under review. The trial court’s findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.” (Haraguchi v. Superior Court (2008) 43 Cal.4th 706, 711-712 [76 Cal.Rptr.3d 250, 182 P.3d 579], fns. omitted.)
DISCUSSION
1. Judge King Did Not Abuse His Discretion by Denying the District Attorney’s Motion.
Judge King’s factual findings are supported by substantial evidence, his legal conclusion is correct, and his application of the law to the facts was not arbitrary or capricious. Accordingly, Judge King did not abuse his discretion by denying the district attorney’s motion to disqualify Judge Goethals.

ci. Judge King’s Factual Findings Are Supported by Substantial Evidence.

Judge King found: (1) the disparity between the district attorney’s disqualifications of Judge Goethals before and after February 24, 2014, was not coincidental; and (2) the disparity ensued from Judge Goethals’s rulings that prosecutors and police officers had committed misconduct. These factual findings are supported by substantial evidence, as set out below.
The evidence is undisputed.[1] In more than three years before February 24, 2014, Judge Goethals was assigned 35 murder cases and the district attorney *922 disqualified him just once under section 170.6. In roughly 18 months after February 24, 2014, Judge Goethals was assigned 58 murder cases and the district attorney disqualified him 55 times under section 170.6.
This dramatic change in the district attorney’s disqualifications of Judge Goethals under section 170.6 coincided with his misconduct rulings against them in three other cases. On February 24, 2014, in two “Mexican Mafia” cases, Judge Goethals found a deputy district attorney intentionally failed to comply with his discovery obligations under Brady v. Maryland (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194] (Brady), and announced a tentative decision to recuse that deputy district attorney from both cases as a discovery sanction.
Beginning in March 2014 and continuing through March 2015, Judge Goethals conducted a series of extraordinary hearings on defense motions in People v. Dekraai (Super. Ct. Orange County, 2012, No. 12ZF0128). The motions alleged several deputy district attorneys and members of law enforcement conspired to commit perjury, suborn perjury, obstruct justice, and intentionally violate the defendant’s constitutional rights under Brady and Massiah v. United States (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199].
The district attorney conceded the Massiah claims and Judge Goethals concluded substantial evidence supported the Brady claims. He found two jail deputies either lied or willfully withheld material information. Furthermore, he found the district attorney had an actual conflict of interest, which had deprived the defendant of due process. Consequently, Judge Goethals excluded statements the defendant made to the jailhouse informant and recused the district attorney’s office in Dekraai.
On February 25, 2014—the day after Judge Goethals issued his tentative ruling in the Mexican Mafia cases—the district attorney disqualified him for the first hme in a gang murder case. Since then, the district attorney has disqualified him in every gang murder case assigned to him. Likewise, shortly after the Dekraai hearings began, the district attorney started disqualifying Judge Goethals in nongang murder cases too. The district attorney has since disqualified him in ah but three nongang murder cases.
*923 b. Judge King’s Legal Conclusion Is Correct.
Judge King concluded a district attorney’s abuse of section 170.6 can violate the separation of powers and independence of the judiciary clauses of the California Constitution. That is correct, based on basic constitutional principles.
“The California Constitution is ‘the supreme law of our state’ [citation], subject only to the supremacy of the United States Constitution. (Cal. Const., art. III, § 1.)” (California Logistics, Inc. v. State of California (2008) 161 Cal.App.4th 242, 250 [73 Cal.Rptr.3d 825].) It is axiomatic that all statutes, including section 170.6, must be applied in a manner which is consistent with the California and United States Constitutions.
The separation of powers clause of the California Constitution divides the powers of the state government into three branches, and dictates that “[pier-sons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution.” (Cal. Const., art. III, § 3.) This clause “is violated when the actions of one branch defeat or materially impair the inherent functions of another.” (Steen v. Appellate Division of Superior Court (2014) 59 Cal.4th 1045, 1053 [175 Cal.Rptr.3d 760, 331 P.3d 136].)
“The focus in questions of separation of powers is ‘the degree to which [the] governmental arrangements comport with, or threaten to undermine, either the independence and integrity of one of the branches ... or the ability of each to fulfill its mission in checking the others so as to preserve the interdependence without which independence can become domination.’ [Citation.]” (City of Sacramento v. California State Legislature (1986) 187 Cal.App.3d 393, 398-399 [231 Cal.Rptr. 686].)
The independence of the judiciary clause (Cal. Const., art. VI, § 1) vests the judicial power of this state in the courts. “One of the powers which has always been recognized as inherent in courts, which are protected in their existence, their powers and jurisdiction by constitutional provisions, has been the right to control its order of business and to so conduct the same that the rights of all suitors before them may be safeguarded.” (Lorraine v. McComb (1934) 220 Cal. 753, 756 [32 P.2d 960].)
Taken together, these basic constitutional principles compel the conclusion that the separation of powers clause prohibits the district attorney (an executive branch agency) from abusing section 170.6 in any manner which materially impairs the inherent powers of the judicial branch. (Cf. Solberg, supra, 19 Cal.3d at pp. 191-192 [powers of court “ ‘can in nowise be *924 trenched upon, lessened or limited by the legislature’ ”].) This conclusion is consistent with the rule that a district attorney cannot take any action under section 170.6 which violates any provision of the Constitution. (Cf. People v. Superior Court (Williams) (1992) 8 Cal.App.4th 688 [10 Cal.Rptr.2d 873].) It is also consistent with the rule that the authority granted under section 170.6 “ ‘is not absolute and unlimited.’ ” (People v. Superior Court (Williams), at p. 698.)
c. Judge King’s Ruling Was Not Arbitrary or Capricious.
Judge King denied the district attorney’s motion. He explained: “Due to the nature and the extent of this executive action, this Court has determined that the prosecution’s consistent filing of section 170.6 motions in murder cases for more than 18 months is a substantial and serious intrusion into the province of the judiciary. It constitutes a threat to the independence of the Orange County judiciary and a violation of the Separation of Powers provision of the California Constitution.”
Judge King’s ruling applied the law to the facts. It was not arbitrary or capricious. It did not exceed the bounds of reason, all of the circumstances being considered, and it did not result in any miscarriage of justice. (See Denham v. Superior Court (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].) It was not an abuse of discretion.
2. Solberg Held Section 170.6 Is Constitutional on Its Face.
In Solberg, the court reaffirmed in a criminal context, its earlier decision in Johnson v. Superior Court (1958) 50 Cal.2d 693 [329 P.2d 5] (Johnson), which held in a civil context, that section 170.6 is constitutional on its face.
Solberg was a consolidated proceeding which considered a petition for writ of mandate and an appeal. The court granted the petition and issued a writ of mandate on grounds not relevant to this proceeding. (Solberg, supra, 19 Cal.3d at pp. 189-190, 204.) As a result, the appeal became moot, and the court ultimately dismissed it. (Id. at p. 204.) Nevertheless, because the issues raised by the appeal would “doubtless arise on remand,” the court addressed them on their merits. (Id. at p. 190.)
The underlying facts in Solberg were undisputed. “[A] criminal complaint charging Tina Peoples with soliciting an act of prostitution . . . came before Judge Ollie Marie-Victoire .... Defense counsel filed a motion to dismiss the charge .... At that point Deputy District Attorney Edward Rudloff . . . asked to be sworn and made an oral motion to disqualify Judge Marie-Victoire pursuant to . . . section 170.6. The judge declined to disqualify herself. . . .” (Solberg, supra, 19 Cal.3d at p. 187, citation & fn. omitted.)
*925 “On the same day criminal complaints charging Diana Solberg, Constance Black, and Javette Rollins with soliciting an act of prostitution also came before Judge Marie-Victoire. In each, defense counsel moved to dismiss; the judge set the matter for hearing in her own department . . . ; Rudloff summarily renewed his motion to disqualify; and the judge summarily denied it.” (Solberg, supra, 19 Cal.3d at p. 187.)
“On the following day . . . Rudloff filed a formal written motion under section 170.6 to disqualify Judge Marie-Victoire from hearing the foregoing four pending matters. The motion was supported by his declaration under penalty of perjury substantially in the form prescribed by the statute. Judge Marie-Victoire denied the written motion on the same ground as she had rejected the oral motions.” (Solberg, supra, 19 Cal.3d at p. 188, fn. omitted.)
On appeal the appellants “principally contended] that section 170.6 is unconstitutional because it violates the doctrine of separation of powers (Cal. Const., art. Ill, § 3) and impairs the independence of the judiciary (Id., art. VI, § 1).” (Solberg, supra, 19 Cal.3d at pp. 190-191.) The Solberg court responded: “In [Johnson], we rejected these identical arguments in sustaining the constitutionality of the statute. We have reviewed the decision in the light of the points raised in the present appeal, and we are convinced the opinion of Chief Justice Gibson therein, properly understood, remains sound law. For the guidance of bench and bar, however, we undertake to restate his reasoning and relate it to the concerns now urged upon us.” (Id. at p. 191, fn. omitted.)
A lengthy discussion followed. At the outset, the Solberg court reiterated the basic principle of government underlying the decision in Johnson: “To put the matter affirmatively and more simply, the Legislature may regulate the exercise of the jurisdiction of the courts by all reasonable means.” (Solberg, supra, 19 Cal.3d at p. 192.) It then observed, “Applying the foregoing principle in Johnson, we held that the disqualification of trial judges is an aspect of the judicial system which is subject to reasonable legislative regulation . . . .” (Ibid.)
Next the Solberg court addressed the contention “that the experience of the courts with the actual operation of the statute during the past two decades reveals such widespread and persistent abuses thereof as to warrant reconsideration of the question and a holding that section 170.6 is now unconstitutional as applied.” (Solberg, supra, 19 Cal.3d at p. 194.) The court described two principal categories of abuse. “First, section 170.6 has assertedly been invoked for the purpose of ‘judge-shopping,’ i.e., of removing the assigned judge from the case on grounds other than a belief that he is personally prejudiced within the meaning of the statute.” (Ibid.) “Second, section 170.6 is said to have been invoked for a variety of purely tactical advantages.” (Id. at p. 195.)
*926 Solberg then declared: “We need not lengthen this recital by recounting further examples of asserted abuse of section 170.6 .... For present purposes we assume the charges are true. We do not condone such practices, nor do we underestimate their effect on the operation of our trial courts. Nevertheless for a number of reasons we are not persuaded that we should reconsider Johnson on this ground and hold the statute invalid as applied.” (Solberg, supra, 19 Cal.3d at p. 195.) The court explained “it is inaccurate to assert that we did not know of these abuses when we decided Johnson." {Ibid.) “Although we did not pause to catalog the various misuses of the statute, the practices now complained of were clearly within the contemplation of the court. The experience of the ensuing years has added quantitatively but not qualitatively to our understanding of the problem.” (Id. at p. 196.)
Solberg held: “[T]o the extent that abuses persist in the utilization of section 170.6 they do not, in our judgment, ‘substantially impair’ or ‘practically defeat’ the exercise of the constitutional jurisdiction of the trial courts. Rather, it may be helpful to view them as a relatively inconsequential price to be paid for the efficient and discreet procedure provided in section 170.6. The statute thus remains a reasonable—and hence valid—accommodation of the competing interests of bench, bar, and public on the subject of judicial disqualification.” (Solberg, supra, 19 Cal.3d at p. 204.)
3. Solberg Did Not Hold Section 170.6 Was Constitutional as Applied.
Solberg did not hold section 170.6 was constitutional as applied to the facts in that case. It is true the court used the words “as applied” three times. Yet a careful review reveals those words were not used in the sense they are relevant here.[2]
First Solberg stated: “In these consolidated proceedings we are called upon to reconsider [Johnson] in light of the experience with the statute during the intervening two decades and as applied here in a criminal context.” (Solberg, supra, 19 Cal.3d at p. 187, italics added.) In this instance, the words “as applied” related to the fact that after Johnson, section 170.6 was amended to apply to both criminal and civil cases.
Later Solberg said: “It is earnestly contended, however, that Johnson is distinguishable [and] . . . that the experience of the courts with the actual operation of the statute during the past two decades reveals such widespread and persistent abuses thereof as to warrant reconsideration of [Johnson] and a *927 holding that section 170.6 is now unconstitutional as applied.” (Solberg, supra, 19 Cal.3d at p. 194, italics added.) Here the court was merely summarizing a contention.
Then Solberg rejected that contention. Specifically, the court held: “We do not condone such practices, nor do we underestimate their effect on the operation of our trial courts. Nevertheless for a number of reasons we are not persuaded that we should reconsider Johnson on this ground and hold the statute invalid as applied.” (Solberg, supra, 19 Cal.3d at p. 195, fn. omitted, italics added.)
Thus, the court in Solberg used the words “as applied” only in reference to events and experiences which occurred after Johnson, and only in the process of reconsidering the holding of Johnson—that section 170.6 is constitutional on its face—and concluding it “should be reaffirmed.” (Solberg, supra, 19 Cal.3d at p. 187.)
4. Solberg Did Not Hold Blanket Challenges Cannot Violate the Separation of Powers.
Solberg did not hold a district attorney’s blanket challenge abuse of section 170.6 cannot violate the separation of powers doctrine (as between the executive branch and the judicial branch) and undermine the independence of the judiciary to such an extent that the statute is unconstitutional as applied. Nor could this ever be true. Again all statutes, including section 170.6, must be applied in a manner which is constitutional. So I do not agree with the conclusion that Solberg controls the outcome here.
Solberg only discussed blanket challenge abuses in rejecting the claim “that Johnson is distinguishable because it ruled on the constitutionality of section 170.6 only in a civil setting, and that in a criminal context the statute should be declared invalid primarily because of an asserted difference in the nature of the parties and their counsel.” (Solberg, supra, 19 Cal.3d at p. 201.) To understand this aspect of Solberg, we must look at the case it mainly relied upon, McCartney v. Commission on Judicial Qualifications (1974) 12 Cal.3d 512 [116 Cal.Rptr. 260, 526 P.2d 268], disapproved on other grounds in Spruance v. Commission on Judicial Qualifications (1975) 13 Cal.3d 778, 799, footnote 18 [119 Cal.Rptr. 841, 532 P.2d 1209] (McCartney).
McCartney considered a recommendation that a judge be removed, rather than censured, for various acts of misconduct. “One of those acts was to engage in angry and excited dialogues with deputy public defenders who filed affidavits of prejudice against him under section 170.6. [Citation.] Among the judge’s proffered defenses was a claim that the affidavits were filed pursuant *928 to a policy of the public defender’s office to prevent him from presiding over criminal trials.” (Solberg, supra, 19 Cal.3d at p. 203.)
McCartney said: ‘“We find this ‘defense’ to be a slim reed . . . . [¶] [Disrespect on the part of the public defender cannot serve to justify petitioner’s injudicious response. As previously indicated, the Legislature clearly foresaw that the peremptory challenge procedure would be open to such abuses but intended that the affidavits be honored notwithstanding misuse. [Citations.]” (McCartney, supra, 12 Cal.3d at pp. 537-538, citing, inter alia, Johnson, supra, 50 Cal.2d at p. 697.)
At this point, McCartney recited in a footnote: ‘“The blanket nature of these filings, however, in itself reflects a measure of impropriety. As the objective of a verification is to insure good faith in the averments of a party [citation], the provision in . . . section 170.6 for the showing of prejudice by affidavit requires a good faith belief in the judge’s prejudice on the part of the individual party or counsel filing the affidavit in each particular case. [Citations.] The ‘blanket’ nature of the written directive issued by the public defender arguably contravened this requirement of good faith . . . .” (McCartney, supra, 12 Cal.3d at p. 538, fn. 13.)
This footnote in McCartney became a subject of disagreement in Solberg. (Compare Solberg, supra, 19 Cal.3d at pp. 203-204 (maj. opn. of Mosk, J.), with id. at pp. 206-207 (cone. & dis. opn. of Tobriner, J.).) Regardless of what one thinks about that disagreement in Solberg, the constitutionality of blanket challenges was not an issue in McCartney, so at most the McCartney court’s statements about them are persuasive dicta, not binding rulings. (See Hubbard v. Superior Court (1997) 66 Cal.App.4th 1163, 1169 [78 Cal.Rptr.2d 819].) Further, to the extent that McCartney said anything about the constitutionality of section 170.6, it merely reiterated the holding of Johnson—the statute, as enacted by the Legislature, is constitutional on its face, despite the potential for this type of abuse.
With these thoughts in mind, consider what Solberg actually said: ‘“The argument is that in all criminal actions the plaintiff and its attorney remain the same .... This uniformity . . . permits the ‘institutionalization’ of many of the abuses discussed herein, and in particular the abuse known as the ‘blanket challenge.’ ” (Solberg, supra, 19 Cal.3d at pp. 201-202, fns. omitted.) The court continued, ‘“Upon close analysis we conclude this contention is different not in kind but only in degree from the arguments rejected in Johnson, and that the difference does not warrant a contrary result. To begin with, we do not believe the self-limiting aspects of abuse of section 170.6 discussed hereinabove are inoperative in the criminal context.” (Id. at p. 202.) “More importantly, the issue of ‘blanket challenges’ is not new to this court.” (Ibid.)
*929 Then Solberg commented on the blanket challenge discussion in McCartney. “We acknowledged [citation] that ‘the entire policy itself may have been an affront to the court’s dignity if it stemmed from public defenders’ dissatisfaction with [Judge McCartney’s] “hard line” performance as a district attorney rather than a good faith belief in prejudice.’ (Italics deleted.) [¶] . . . We felt compelled, nevertheless, to speak to the ‘blanket’ nature of these filings.” (Solberg, supra, 19 Cal.3d at p. 203.)
Solberg concluded, “There is thus no doubt that in McCartney we strongly disapproved of the practice of ‘blanket challenges,’ and we reaffirm that position herein. But it is also manifest from McCartney that we do not believe the practice vitiates the statute .... In short, the possibility of the filing of ‘blanket challenges’ does not distinguish the present criminal proceeding from Johnson, and the reasoning of that decision is equally applicable to the current version of the statute, governing both civil and criminal cases. [Citation.]” (Solberg, supra, 19 Cal.3d at pp. 203-204.)
I see nothing in this discussion of blanket challenges which supports the lead opinion’s conclusion that Solberg “prevents respondent court or this court from entertaining the argument that the district attorney’s use of peremptory challenges resulted in a separation of powers violation.” (Ante, at p. 907.) That the practice does not vitiate the statute on its face does not mean it cannot result in a separation of powers violation as applied.
5. Solberg Can Be Fairly Distinguished from This Case, Both Legally and Factually.
Unlike my colleagues, I believe Solberg can be “fairly distinguished” (Trope v. Katz (1995) 11 Cal.4th 274, 287 [45 Cal.Rptr.2d 241, 902 P.2d 259]) from this case, both legally and factually. The analysis and comparison below reveals the separation of powers issues are different, and the character and magnitude of the blanket challenge abuses are different. These legal and factual differences warrant a different result, because the ratio decidendi of Solberg simply does not encompass the legal issue or the facts presented in this case. As a result, Solberg has little or no force as controlling precedent here. (See generally 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 509, p. 572.)
a. The Separation of Powers Issues Are Different.
Solberg concerned the separation of powers between the legislative branch and the judicial branch. The question was: Did the Legislature violate the separation of powers doctrine when it enacted section 170.6 to regulate the judiciary? On this question Solberg reaffirmed the holding of Johnson that *930 the statute, as enacted by the Legislature, did not violate the separation of powers doctrine, despite the potential for various types of abuses, including blanket challenges. (Solberg, supra, 19 Cal.3d at pp. 186-187.)
This case concerns the separation of powers between the executive branch and the judicial branch. The question is: Did the district attorney violate the separation of powers clause when it used section 170.6 to retaliate against a judge? Solberg did not consider this question. Again it only considered similar abuses in deciding they do not “vitiate[] the statute” as enacted by the Legislature. (Solberg, supra, 19 Cal.3d at p. 203.)
Hence, I cannot agree with the lead opinion conclusion that ‘“In sum and on balance, we are bound by Solberg in our exantination of the separation of powers issue presented.” (Ante, at p. 904.) While the constitutional provisions at issue here and in Solberg are the same (Cal. Const., art. Ill, § 3, art. VI, § 1), the separation of powers questions are not.
b. The Character of the Blanket Challenge Abuses Is Different.
In Solberg, “the People’s motions to disqualify Judge Marie-Victoire in the criminal actions were ‘blanket challenges’ motivated by prosecutorial discontent with her prior rulings of law.” (Solberg, supra, 19 Cal.3d at p. 188.) They disagreed with her “views on the legal issue relating to the discriminatory enforcement of prostitution laws.” (Id. at p. 206.)
Here Judge King found the district attorney’s motions to disqualify Judge Goethals were motivated by their discontent with his misconduct rulings against them. They were based on the fact he called them out on their misconduct, and they had “the appearance of attempting to intimidate, punish, and/or silence Judge Goethals, and to send a warning to the other local judges that similar rulings will produce a similar fate.”
In short, the district attorney’s disqualification motions were not “premised on the fact that ‘the People don’t feel that [they] can get a fair trial in cases of these kinds in [Judge Goethals’] court.’ ” (Solberg, supra, 19 Cal.3d at p. 206.) This is important because, as the court said in Solberg, “section 170.6 explicitly recognizes such belief as a sufficient ground for disqualification . . . .” (Id. at p. 193.) It does not recognize the desire to intimidate, punish or silence as a sufficient ground for disqualification.
c. The Magnitude of the Blanket Challenge Abuses Is Different.
In Solberg the district attorney disqualified Judge Marie-Victoire in four prostitution cases. Here the district attorney disqualified Judge Goethals in 55 *931 murder cases. This is noteworthy because while the small number of disqualifications in Solberg can be viewed “as a relatively inconsequential price to be paid for the efficient and discreet procedure provided in section 170.6” (Solberg, supra, 19 Cal.3d at p. 204), the same cannot be said of the comparatively large number of disqualifications here.
CONCLUSION
The district attorney’s systematic abuse of section 170.6 undermined the principle of judicial independence and violated the separation of powers doctrine. We are not powerless to stop it. The petition should be denied.
A petition for a rehearing was denied August 5, 2016, and the petitions of respondent and real party in interest for review by the Supreme Court were denied November 30, 2016, S236991. Werdegar, J., Liu, J., and Cuéllar, J., were of the opinion that the petition should be granted.

 The evidence consists of facts in the case files and other records of respondent court, or facts that are not reasonably subject to dispute and capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy. Judge King properly *922 took judicial notice of these facts. (Evid. Code, § 452, subds. (d) & (h); People v. Thomas (1972) 8 Cal.3d 518, 520, fn. 2 [105 Cal.Rptr. 366, 503 P.2d 1374].)

 Even if Solberg implied section 170.6 was constitutional as applied to the facts of that case, it is only binding precedent with reference to those facts. (Western Landscape Construction v. Bank of America (1997) 58 Cal.App.4th 57, 61 [67 Cal.Rptr.2d 868].)